**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STEVEN MUSKAL, as Independent Administrator of the Estate of James B. Muskal,<br><br>Plaintiff,<br>-against-<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Civil No. 1:25-cv-15478<br><br>Judge Thomas M. Durkin |

**DEFENDANT WELL FARGO BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION, TO STAY LITIGATION, AND FOR ATTORNEYS' FEES AND COSTS**

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et. seq.,* and the applicable agreement between the parties, Defendant Wells Fargo Bank, N.A. ("Wells Fargo") respectfully moves the Court to compel arbitration, stay this proceeding pending the completion of arbitration, and award Wells Fargo its attorneys' fees and costs incurred in compelling arbitration.

## INTRODUCTION

This action relates to allegedly unauthorized transactions made from a bank account maintained by James Muskal ("Decedent") at Wells Fargo (the "Account"). Plaintiff is the administrator of the Decedent's estate (the "Estate"). The Account is governed by a deposit account agreement that contains a binding Arbitration Agreement between Wells Fargo and Decedent.

Despite the existence of this valid and enforceable Arbitration Agreement, the Estate filed the instant lawsuit against Wells Fargo for violation of the Electronic Fund Transfer Act (the "EFTA") and negligence regarding the disputed transactions on the Account. And, despite Wells

Fargo's lawful demand that the Estate submit its claims to arbitration, Plaintiff has not agreed to do so. Accordingly, Wells Fargo now seeks to compel the Estate to arbitrate its claims and an award of its attorneys' fees and costs pursuant to the Arbitration Agreement.

## FACTUAL BACKGROUND

1. On November 19, 2024, the Decedent signed a Consumer Account Application to open the Account at Wells Fargo (the "Account Application"). A copy of the Account Application signed by the Decedent is attached as **Exhibit A**.

2. The Account Application provides, in pertinent part, as follows:

> **I have received a copy of the applicable account agreement and the privacy policy (each may be amended from time to time) and agree to be bound by their terms.** I also agree to the terms of the dispute resolution program described in the foregoing agreements. **Under the dispute resolution program, our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge.**

Ex. A at p. 2 (emphasis in original).

3. The Decedent signed the Account Application above and below the text quoted above. *Id.* at pp. 2-3.

4. At the time of the transactions at issue in this case, the Account and the relationship between Decedent and Wells Fargo were governed by the Deposit Account Agreement effective November 6, 2024, together with the Consumer Account Fee and Information Schedule and Consumer Account Addendum (the "Account Agreement"). A copy of the Account Agreement is attached as **Exhibit B**.

5. The Account Agreement provides that "[w]hen you[1] sign an account application or use your account, including any account service, you . . . consent to the terms of this Agreement." Ex. B at p. 2.

6. Moreover, the Account Agreement expressly states that it is "binding on your personal representatives, executors, administrators, and successors, as well as [Wells Fargo's] successors and assigns." *Id.* at p. 5.

7. The Account Agreement contains a binding Arbitration Agreement requiring the Decedent or his administrators and Wells Fargo to arbitrate any dispute they may have. *Id.* at pp. 38-39.

8. The Arbitration Agreement provides, in pertinent part:

> If you have a dispute with us, we hope to resolve it as quickly and easily as possible. First, discuss your dispute with a banker. If your banker or another Wells Fargo employee is unable to resolve your dispute, you agree that either Wells Fargo or you can initiate arbitration as described in this section.
>
> **Definition:** Arbitration means an impartial third party will hear the dispute between Wells Fargo and you and provide a decision. Binding arbitration means the decision of the arbitrator is final and enforceable. A dispute is any unresolved disagreement between Wells Fargo and you.
>
> **Wells Fargo and you each agree to waive the right to a jury trial or a trial in front of a judge in a public court.** This Arbitration Agreement has only one exception: Either Wells Fargo or you may still take any dispute to small claims court. . . .

*Id.* at p. 38 (emphasis in original).

9. The Federal Arbitration Act ("FAA") governs the Arbitration Agreement. *See id.*

10. On December 19, 2025, Plaintiff filed this lawsuit on behalf of the Estate against Wells Fargo.

---

[1] The Account Agreement defines "you" and "your" to mean "each account owner, authorized signer, and any other person authorized to operate your account." Ex. B at p. 2.

11. On February 10, 2025, Wells Fargo demanded Plaintiff submit the Estate's claims to arbitration pursuant to the Arbitration Agreement, but Plaintiff has not agreed to voluntarily do so, thereby necessitating this Motion.

## ARGUMENT

### 1. The Court should enforce the Arbitration Agreement and compel Plaintiff to arbitrate the Estate's claims against Wells Fargo.

Federal policy strongly favors arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."); *see* 9 U.S.C. § 2 ("[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable."). "[C]ourts must 'rigorously enforce' arbitration agreements according to their terms . . . ." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)); *see Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 886 (N.D. Ill. 2014) ("Courts are to uphold and enforce applicable arbitration agreements according to their terms unless they are invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'"). "Under the FAA, if the parties have a valid arbitration agreement and the asserted claims in a lawsuit are within its scope, the arbitration requirement must be enforced." *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1097 (N.D. Ill. 2015); *see JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018) ("Where the parties have agreed to arbitrate their dispute, the job of the courts -- indeed, the obligation -- is to enforce that agreement.").

Arbitration must be compelled under the FAA "if three elements are present: "(1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (quoting *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017)). A court must stay the proceeding pending the completion of arbitration when it finds a dispute is subject to arbitration and a party requests a stay. 9 U.S.C. § 3. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Byrd*, 470 U.S. at 218 (emphasis in original). "The party seeking to invalidate or oppose the arbitration agreement bears the burden of demonstrating that the arbitration agreement is unenforceable and that the claims are unsuitable for arbitration." *Bundy*, 22 F. Supp. at 887; *see Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000).

As set forth below, the Arbitration Agreement is an enforceable written agreement to arbitrate, and the Estate's claims are squarely within the scope of the Arbitration Agreement. Since Plaintiff has refused to voluntarily submit the Estate's claims to arbitration, the Court should grant this Motion and compel arbitration.

***a. The Arbitration Agreement is a valid and enforceable agreement to arbitrate.***

The Decedent signed the Account Application acknowledging his receipt of the Account Agreement and agreeing to be bound by its terms, and specifically, the Arbitration Agreement. *See* Ex. A at pp. 2-3. Under Illinois law, the signed Account Application confirms the Decedent's assent to the terms of the Account Agreement, including the Arbitration Agreement. *See Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 457 (N.D. Ill. 2021) ("Under Illinois law, the signed signature cards for plaintiffs' Chase accounts

acknowledging receipt of the DAA demonstrate plaintiffs' assent to the DAA's terms."); *Perik v. JP Morgan Chase Bank, U.S.A., N.A.*, 2011 IL App (1st) 093088-U, ¶ 34 ("A contractual relationship exists between a bank and its customer. . . . The account agreement and signature card create a binding contract between the parties.") (citations omitted); *Kaplan v. JPMorgan Chase Bank, N.A.*, 14 C 5720, 2015 WL 2358240, *5 (N.D. Ill. May 12, 2015) ("A binding contract between a bank and its depositor is created by signature cards and a deposit agreement.") (citations omitted). Moreover, Decedent used the Account after opening it, which further demonstrates his intent to accept and be bound by the terms of the Account Agreement. *See Perik*, 2011 IL App (1st) 093088-U, ¶ 35 ("By continuing to use her account at Chase, Perik acquiesced to the 2006 Agreement's terms, which included changes to the arbitration provision."); *Boomer v. AT & T Corp.*, 309 F.3d 404, 416–17 (7th Cir. 2002) (plaintiff's continued use of defendant's services constituted his acceptance of arbitration agreement).

By signing the Account Application and using the Account, the Decedent agreed to the Arbitration Agreement. The Arbitration Agreement is a valid and enforceable written agreement to arbitrate. Plaintiff, as the administrator of the Estate, is equally bound by the Arbitration Agreement for the claims asserted. *See, e.g., People ex rel. Barrett v. Commercial State Bank of Savanna*, 284 Ill. App. 484, 489, 1 N.E.2d 94, 96 (2d Dist. 1936) ("appellant, as administrator, was bound by the valid contracts made by the deceased"); *Carter v. SSC Odin Operating Co., LLC*, 2012 IL 113204, ¶ 57, 976 N.E.2d 344, 360 (administrator of estate was bound by arbitration agreement between decedent and defendant for claim that accrued to decedent prior to her death and brought for the benefit of her estate); *see also* Complaint, ¶ 35.

***b. The Estate's claims fall squarely within the scope of the Arbitration Agreement.***

It is indisputable that the Estate's claims are within the scope of the Arbitration Agreement. "The FAA creates a presumption in favor of arbitrability . . . ." *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998); *see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960). "Doubts should be resolved in favor of coverage." *Id.* at 583; *see Bundy*, 22 F. Supp. 3d at 887 ("The FAA 'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"). The party opposing arbitration has the burden to show the arbitration provision does not cover the claims at issue. *See Randolph*, 531 U.S. at 91.

The parties agreed to arbitrate any dispute between them, which the Arbitration Agreement defines as ***any*** unresolved disagreement. *See* Ex. B at p. 38 ("A dispute is any unresolved disagreement between Wells Fargo and you."). The Estate's claims are unresolved disagreements between the parties arising from their banking relationship and the allegedly unauthorized transactions on the Account. It cannot be credibly disputed that the Estate's claims are within the scope of the Arbitration Agreement. *See Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1099 (N.D. Ill. 2015); *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1034 (7th Cir. 2012). Accordingly, this Court should enforce the Arbitration Agreement and compel Plaintiff to submit the Estate's claims to arbitration.

**2. Wells Fargo is entitled to an award of its attorneys' fees and costs incurred in compelling arbitration.**

Despite Wells Fargo's efforts to obtain the Estate's agreement to submit its claims to arbitration, including by providing documents to its counsel requested to evaluate Wells Fargo's demand, Plaintiff has not agreed to Wells Fargo's demand, thereby necessitating the instant Motion. The Estate further opposes this Motion.

The Arbitration Agreement provides:

> Arbitration is beneficial because it provides a legally binding decision in a more streamlined, cost-effective manner than a typical court case. But, the benefit of arbitration is diminished if either Wells Fargo or you refuse to submit to arbitration following a lawful demand. Thus, **the party that does not agree to submit to arbitration after a lawful demand must pay all of the other party's costs and expenses for compelling arbitration.**

Ex. B at p. 38 (emphasis added). Wells Fargo is entitled to an award of its attorneys' fees and costs incurred in compelling arbitration against the Estate. *See J.B. Esker & Sons, Inc. v. Cle-Pa's P'ship*, 325 Ill. App. 3d 276, 281, 757 N.E.2d 1271, 1276 (5th Dist. 2001) (party may recover attorney's fees when a contract provides for an award of fees); *Quintana v. Transp. Am., Inc.*, No. 20-21300-CIV, 2022 WL 538167, *2 (S.D. Fla. Feb. 23, 2022) (fees awarded to defendants for prevailing on motion to compel); *Baggaley v. Wells Fargo Bank, N.A.*, No. CV1803605ABFFMX, 2018 WL 8804575, *4 (C.D. Cal. Nov. 8, 2018) ("as the party who successfully compelled arbitration in this case, Wells Fargo may recover reasonable attorneys' fees under the Agreement."); *Duvall v. Am.'s Home Place, Inc.*, 122CV00128GNSHBB, 2024 WL 42330, *3-4 (W.D. Ky. Jan. 3, 2024) (granting defendant's motion for fees and costs incurred in compelling arbitration pursuant to arbitration agreement).

**WHEREFORE**, Defendant, Wells Fargo Bank, N.A., respectfully requests entry of an Order: (i) compelling Plaintiff to submit the Estate's claims against Wells Fargo to arbitration; (ii) staying this action during the pendency of the arbitration proceeding; (iii) finding Wells Fargo is entitled to its attorneys' fees and costs incurred in connection with compelling arbitration, in an amount to be determined pursuant to a subsequent motion; (iv) reserving jurisdiction to determine the amount of fees and costs to which Wells Fargo is entitled; and (v) granting such other and further relief as is just and proper.

Dated: February 13, 2026

By: /s/ Matthew Scot Payne
Attorney for Defendant Wells Fargo Bank, N.A.

MATTHEW SCOT PAYNE
mpayne@foxrothschild.com
Fox Rothschild LLP
321 N. Clark Street, Suite 1600
Chicago, Illinois 60654
Phone (312) 517-9200