**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STEVEN MUSKAL, as Independent Administrator of the Estate of James B. Muskal,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Civil No. 1:25-cv-15478<br><br>Judge Thomas M. Durkin |

**PLAINTIFF'S RESPONSE OPPOSING THE MOTION TO COMPEL ARBITRATION**

## Introduction

This is an action for violations of the Electronic Funds Transfer Act and a state-law claim for negligence, due to Wells Fargo's refusal to reimburse for unauthorized Jamaica transfers on the James Muskal ("Muskal") account's ATM/debit card for a period of 12 weeks, until Muskal's death in 2025 at age 86. As stated in the Complaint, the transactions started while Muskal was hospitalized in Chicago – purportedly with use of his ATM card in rural Jamaica -- and continued after his death for many days. The transactions are obviously fraudulent – seven purchases over seven days at an auto store for $20,000; six purchases over three days for $4,600 at a hardware store; ATM withdrawals of $20,000 in January, $12,000 in gambling purchases, etc. Meanwhile, Muskal stayed in Chicago to comfort his ill wife who passed away in February 2025, and he was not even contacted by Wells Fargo to alert him of the potential fraud. The Wells Fargo claim that Muskal authorized these Jamaica transactions is baseless, and has resulted in this lawsuit.

In response to the Complaint, Wells has filed a Motion to compel arbitration. Wells claims that Muskal agreed to a contract which included an arbitration provision on page 38 of an account agreement, based on the Motion's Exhibit A account application and an Exhibit B (unsigned) account agreement.

As shown below, the Motion fails to satisfy its burden of proof for four independent and separate reasons which are all individually sufficient to require denial of this Motion: (1) there is no authentication of Motion Exhibits A and B to make them admissible; (2) there is no stated exception to the hearsay rule to make the hearsay in Exhibits A and B admissible; (3) there is no evidence that Muskal's signatures evidenced agreement to an account contract; and (4) there is no evidence of the specific contract and arbitration provision which Muskal purportedly agreed to.

## I. The Motion does not meet its burden of proof that Muskal agreed to an arbitration provision, for four separate and independent reasons which each require denial of the Motion.

### A. There is no authentication of the Wells exhibits as required under Fed. R. Evid. 901(a), and thus no admissible proof of any agreement to arbitrate.

The party seeking to compel arbitration must establish that an agreement to arbitrate exists. *Pearson v. United Debt Holdings, LLC*, 123 F. Supp. 3d 1070, 1073, (N.D.Ill. 2015); *Gen. Ass'n of Regular Baptist Churches v. Scott*, 549 F. App'x 531, 533 (7th Cir. 2013). The first reason that the Motion fails is that it fails to authenticate its exhibits such that they are admissible evidence to support the Motion.

In determining authenticity, a court follows Fed. R. Evid. 901(a), which requires evidence sufficient to support a finding that the matter in question is what its proponent claims. *Pearson, id., citing Smith v. City of Chicago,* 242 F.3d 737, 741 (7th Cir. 2001). Only after the proponent has introduced such evidence document does the burden shift to the opponent of the

evidence to rebut the evidence of authenticity. *Id.* The failure to properly authenticate evidence is sufficient to preclude the court from considering it. *Pearson, id., citing Estate of Brown v. Thomas*, 771 F.3d 1001, 1005-6 (7th Cir. 2014). Compulsion of arbitration is inappropriate where the proponent of arbitration fails to produce evidence that an agreement to arbitrate existed. *Pearson, id., citing Scott*, 549 F. App'x at 532.

In this matter as in *Pearson*, the Motion must be denied where its attached documents have no authentication to render them admissible, and thus the Court is without sufficient evidence to find that there exists an agreement to arbitrate. As in *Pearson*, support for the existence of an arbitration provision does not come from the Complaint but is found exclusively in the documents attached to defendant's Motion. And such purported agreements containing arbitrations provisions that are not attached to the complaint are considered "only if the proponent of arbitration properly authenticates the document containing an arbitration provision through an affidavit or otherwise." *Pearson, id. citing Conway*, 2015 U.S. Dist. LEXIS 56980, 2015 WL 1989665; *Achey v. BMO Harris Bank, N.A.*, 64 F. Supp. 3d 1170, 1175-76 (N.D. Ill. 2014. As in *Pearson*, the record is devoid of evidence supporting the conclusion that the document attached to Wells' Motion is an agreement into which Muskal entered into -- the document is not physically signed; no witness affirms any of (1) that the documents were found in Wells' business records, or (2) that they were presented to Muskal when he opened his account, or (3) that the Exhibit A document actually bears Muskal's electronic signature. *See Pearson, id.* And Wells does not argue that the purported agreement constitutes any type of evidence that is self-authenticating under Rule 902 of the Federal Rules of Evidence; nor is there any basis under Rule 902 for Wells to argue to do so.

And as in *Pearson,* plaintiff has not admitted through statements or conduct that the document attached to the Wells motion to compel arbitration is the agreement into which Muskal entered. The proponent of the document bears the initial burden of establishing the authenticity of the document. *Pearson, id. citing Smith*, 242 F.3d at 741; cf. *Estate of Brown*, 771 F.3d at 1006 (failure to authenticate potentially dispositive evidence was "a fatal procedural error").

As they are unsupported by affidavits or other evidence, the Wells assertions in its brief that the document attached is the agreement into which Muskal entered into is insufficient to authenticate the document. "Unsworn statements by attorneys in briefs are not evidence on which the Court can rely." *Pearson, id. citing Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015) ("assertions in briefs are not evidence"); *In re Morris Paint & Varnish Co*., 773 F.2d 130, 134 (7th Cir. 1985) ("Arguments and factual assertions made by counsel in a brief, unsupported by affidavits, cannot be given any weight."). As in *Pearson,* Wells has not carried its initial burden of providing threshold evidence that demonstrates that the documents in Exhibits A and B are what Wells claim they are, and without an agreement to arbitrate, this Court cannot compel arbitration.

**B. The Motion relies on inadmissible hearsay in Exhibits A and B, and thus there is no admissible proof of any agreement to arbitrate for this reason as well.**

Even if Exhibits A and B were authenticated, they are barred as hearsay under F. R. Evid. Rule 801 where Wells has not cited any exception to the hearsay rule. In violation of Rule 801, Wells attempts to offer the statements in Exhibits A and B for the truth of the matter stated therein – specifically as to Muskal that:

> I have received a copy of the applicable account agreement and the privacy policy (each may be amended from time to time) and agree to be bound by their terms. I also agree to the terms of the dispute resolution program described in the foregoing agreements.

Ex. A at 2. As hearsay, this evidence must be barred unless Wells states some exception, which it has not done. *See Stephen v. Home Depot U.S.A.,* 2021 U.S. Dist. LEXIS 208767, *10, (N.D.Ill.). Without any admissible evidence to support its arbitration Motion, "there is no evidence that plaintiff agreed to arbitrate disputes" and the Motion must be denied. *Horvath v. Apria Healthcare, LLC*, 2019 U.S. Dist. LEXIS 192327, *2 (N.D.Ill.).

Nor has Wells Fargo laid the foundation for the business records exception to the hearsay rule. FRE 803(6) requires that a business record be: (1) made at or near the time by someone with knowledge; (2) kept in the course of a regularly conducted business activity; (3) made as a regular practice; and (4) testified to by the custodian or another qualified witness, or certified in compliance with Rule 902(11). Wells Fargo has offered none of this, and thus the hearsay evidence is inadmissible as in *Stephen.* Accordingly, even if the exhibits had been authenticated, they would still be barred by the hearsay rule, and as such arbitration could not be allowed here under *Pearson* and *Horvath* where Wells lacks admissible proof of the arbitration contract that was agreed to.

**C. The Motion does not show proof that Muskal's signatures are connected and show agreement to an account agreement contract.**

Even assuming Exhibits A and B were authentic and that the evidence was not barred as hearsay, Wells still has not provided sufficient proof that Muskal agreed to any contract by his signatures, as there is no proof of a connection from his Exhibit A signatures to any agreement to be bound by a contract.

As stated before, the Motion identifies the provision it wishes to enforce on the face of Exhibit A page 2, which states:

> I have received a copy of the applicable account agreement and the privacy policy (each may be amended from time to time) and agree to be bound by their terms. I also agree to the terms of the dispute resolution program described in the foregoing agreements.

The Motion then claims: "Decedent signed the Account Application above and below the text quoted above. Id. at pp. 2-3" (Motion at ¶3), and argues that "The Decedent signed the Account Application acknowledging his receipt of the Account Agreement and agreeing to be bound by its terms." Motion at 5. Unfortunately for Wells, neither of the signatures "above and below" the account agreement text show any purported agreement with that text as is claimed. As shown below, the signature above the text relates to a completely separate different issue – TIN certification. And as to the signature purportedly "below" the page 2 text, the lone untitled electronic signature on Ex. A page 3 is an entirely separate document that could simply be the bank's signature card to verify account transactions, and thus have no connection to the text on page 2 or any account agreements of any kind.

**1. The Page 2 signature does not relate to the text below.**

Starting with the signature above the quoted language on Ex. A page 2, this signature has no connection to the quote below it and thus does not show agreement to be bound by an Account Agreement. Instead, the page 2 signature box is captioned above as "TIN certification signature." Ex. A. Moreover, the signature box appears at the bottom of a partitioned area captioned "Request for Taxpayer Identification Number and Certification" – and the signature box is the only way for the customer to satisfy this

"Request" for "Certification." In addition, a party does not sign above the language to be agreed to, but below to show that the prior language has been reviewed and agreed to. Accordingly, the evidence is overwhelming that the Exhibit A signature above the Account Application.

**2. There is no proof that the lone untitled signature on "page 3" has any relation to the separate document on page 2.**

Wells also fails to show that the lone untitled electronic signature on Ex. A page 3 has any connection to the language on page 2, as page 3 is an entirely separate electronic document from page 2 that has simply been presented together through nothing more than Bates-stamping to presume that this "page 3" document immediately followed page 2 in any fashion. First, the page 3 signature is uncaptioned, unlike the TIN signature on page 2. If Wells wanted to show that the page 3 signature was a signature for "Agreement to Received Account Agreement", then it should have captioned the box accordingly as it did with the TIN signature box on page 2.

Moreover, it is common knowledge that a bank must have a customer's signature on hand – the signature card -- for review of a customer's signature prior to approval of withdrawals, check cashing and other transactions. This page 3 signature could have simply been Muskal's signature card for approval of future bank transactions, rather than an agreement to an Account Agreement. Nothing in Exhibit A shows otherwise, and we know that Muskal must have made a signature for his signature card at some point during his account opening. Or this page 3 signature could have been approval by Muskal to open a savings account the same day – we simply have no idea what this signature was for. Wells has provided no proof that the lone untitled signature on page 3 has anything to do

with the first two pages of Exhibit A, other than to Bates label the lone signature document page as "page 3" of the same exhibit and call it a day.

Nor do we have the hard document of Exhibit A to show that Muskal actually reviewed and agreed to the prior pages of a hard document when he signed the "page 3." It is apparent from the form of Exhibit A that all its separate pages are electronic and electronically signed, including from the failure to check the boxes on page 2 and 3 for "submit manually" for hard copies. There was probably a small electronic signature box for Muskal to manually append his signature as shown on page 3. As to what specifically Muskal was shown before making the page three box signature – we do not know and Wells has not provided any proof. And as to what Muskal believed he was signing for with the page 3 signature – we do not know and Wells has not provided any proof. To satisfy its burden of proof that the untitled uncaptioned lone signature on page 3 has anything to do with the language on page 2 – rather than just be a signature card or opening up a savings account – Wells had to provide additional proof outside of Exhibit A which is not done in the Motion. Wells had the burden to show proof of the process by which this Court could make the determination of what the page 3 signature was for, and it has failed to do so.

As shown above, Wells has not shown that Muskal's two signatures have anything to with an agreement to an Account Agreement and arbitration. Thus, its Motion must be denied as it has not met its burden of proof under *Pearson* and *Horvath*.

**D. The Motion has not presented evidence sufficient to show that Exhibit B is the contract that was given to Muskal or agreed to.**

Lastly, even if all the Wells exhibits were admissible, and even if the Exhibits showed that Muskal agreed to some deposit contract, the Motion would still fail because

Wells has not provided any evidence or proof that Exhibit B is the actual agreement that was entered into between the parties. Without any reference to exhibits or proof of any kind, the Motion merely asserts in unsupported fashion:

> "At the time of the transactions at issue in this case, the Account and the relationship between Decedent and Wells Fargo were governed by the Deposit Account Agreement effective November 6, 2024, together with the Consumer Account Fee and Information Schedule and Consumer Account Addendum (the "Account Agreement"). A copy of the Account Agreement is attached as Exhibit B."

Motion at ¶4. This bare unsupported assertion is insufficient for Wells to meet its burden of proof here as shown below.

After analysis, the exhibits themselves (even if they were admissible) do not prove Wells' unsupported assertion that Exhibit B was the specific contract agreed to by the parties. As to Exhibit B, it is not signed by Muskal. Exhibit B on its face has no indication that Muskal agreed to it, or that he even received it.

And even (incorrectly) presuming that Exhibit A adequately shows with admissible evidence that Muskal both received and agreed with some contract, Exhibit A does not show that such agreed contract is in fact Exhibit B. Exhibit A merely states: "I have received a copy of the applicable account agreement" on November 19, 2024. Exhibit A does not state that Muskal received the specified agreement in Exhibit B which states it is effective November 6, 2024. Muskal could have actually received a subsequent agreement perhaps dated November 17, 2024. Wells itself states on the very first page of the asserted applicable account agreement that "We regularly update this Agreement." Ex. B at 1.

Or Muskal could have actually received a prior agreement perhaps dated effective October 6, 2024, if the rollout of the new November 6 agreement had been delayed for two weeks everywhere or at least in Illinois. New contracts are not always reviewed or circulated at the date initially put on the top – if they are agreed to, that occurs on the date they are presented to, reviewed, and then actually accepted by the parties.

Accordingly, we have no proof that Exhibit B was the specific agreement presented to and accepted by Muskal. Wells has only shown an unsigned pdf of a contract it amends all the time, and yet asks this court to presume that it is the contract agreed to by Muskal only because the unsigned pdf predates the transaction at issue.

Such failure to show proof of the actual agreement of the parties would doom Wells Motion in any circumstances, but such failure is particularly crucial here for enforcement of an arbitration provision. The actual specific agreement language used addressing arbitration – as well as how visibly such language was presented in the actual specific agreement -- is vital to determine if Muskal was adequately informed in a 40+ page purported agreement that he was waiving his right to be heard in this Court. *See e.g., Geske v. Am. Wagering, Inc.*, 2024 U.S. Dist. LEXIS 19538, *7 (Durkin J.) (denying arbitration where insufficient evidence of "reasonable notice" necessary to establish a legally binding agreement).

In summary, while Exhibit B somewhat predates the transaction, that alone is simply not good enough to show that this unsigned pdf was the actual contract between the parties if a contract was agreed to on November 19, 2024. Because Wells has not presented proof that Exhibit B was the applicable contract between the parties, its Motion for arbitration based on a provision in Exhibit B must be denied for this reason as well.

As shown above in Parts A-D, the Motion fails to satisfy its burden of proof for four independent and separate reasons which are all individually sufficient to require denial of this Motion: (1) there is no authentication of Motion Exhibits A and B to make them admissible; (2) there is no stated exception to the hearsay rule to make the hearsay in Exhibits A and B admissible; (3) there is no evidence that Muskal's signatures evidenced agreement to an account contract; and (4) there is no evidence of the specific contract and arbitration provision which Muskal purportedly agreed to. As any one of these reasons require denial of the Motion, and as they are all present here, the Motion must be denied.

**II. This Court should comply with Fed. R. Civ. P. 6(c)(2) -- "Any affidavit supporting a motion must be served with the motion" – and refuse to allow any new affidavits by Wells to support its Motion.**

As shown above, the current Motion fails for four separate reasons, and this Court should follow the express mandate of Fed. R. Civ. P. 6(c)(2) -- "Any affidavit supporting a motion must be served with the motion" -- to disallow any attempts by Wells to cure the Motion's numerous defects with a new affidavit. This issue was directly addressed in *Horvath*, where its defendant submitted two new affidavits in its reply brief to support its arbitration motion. Judge Gettlemen cited Fed. R. Civ. P. 6(c)(2) to hold that the belated affidavits were "procedurally improper", and *Horvath* struck the entire reply brief due to such impropriety and defendant's failure to comply with Fed. R. Civ. P. 6(c)(2). 2019 U.S. Dist. LEXIS 192327 (N.D.Ill.) at *3.

Moreover, compliance with Fed. R. Civ. P. 6(c)(2) is particularly appropriate in this matter where plaintiff has already consented to Wells' counsel's request for a two-week extension of time to file its instant Motion in response to the Complaint. With 35 days to prepare its Motion, it is not a mere oversight that Wells presented a Motion that fails on

four separate grounds. As *Horvath* held, "'A reply brief is for replying'—not for sandbagging." *Id.*

As shown above, after 35 days to prepare, Wells filed a Motion that woefully fails on four separate grounds to meet its burden of proof to impose arbitration and resolve this in its forum of choice. Accordingly, in compliance with Fed. R. Civ. P. 6(c)(2) and *Horvath*, it is time to move on to the merits of this matter without further filings that would violate the mandate of Fed. R. Civ. P. 6(c)(2) that "Any affidavit supporting a motion must be served with the motion." Plaintiff respectfully requests that this Court deny Wells Fargo's Motion to Compel Arbitration with prejudice.

By:____/s/ Michael Steigmann_____
Attorney for Plaintiff

Michael Steigmann
150 S. Wacker Dr. #2400
Chicago, Illinois 60601
(312) 833-5945