**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STEVEN MUSKAL, as Independent Administrator of the Estate of James B. Muskal,<br><br>Plaintiff,<br><br>-against-<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Civil No. 1:25-cv-15478<br><br>Judge Thomas M. Durkin |

**DEFENDANT WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION, TO STAY LITIGATION, AND FOR ATTORNEY'S FEES AND COSTS**

Defendant, Wells Fargo Bank, N.A., files this Reply in Support of its Motion to Compel Arbitration, to Stay Litigation, and for Attorneys' Fees and Costs [Dkt. 13] ("Motion to Compel").

In its Response Opposing the Motion to Compel Arbitration [Dkt. 18] ("Response"), Plaintiff does not dispute that (1) the Decedent signed the Consumer Account Application to open the Account at issue, (2) a binding Arbitration Agreement exists between the parties, and (3) the claims asserted in this lawsuit are within the scope of the Arbitration Agreement. Instead, Plaintiff asserts only technical evidentiary objections and other baseless arguments, none of which have merit and all of which ignore Plaintiff's own allegations and exhibits to the Complaint.

The Court can determine that Exhibit B to Wells Fargo's Motion to Compel is the Account Agreement that was in effect at the time the Account was opened (and all relevant times thereafter) without a declaration, based on the Complaint itself. The Wells Fargo monthly account statements

attached as Exhibits B and G to the Complaint both identify the Account Agreement effective November 6, 2024, as the applicable agreement.

Moreover, Plaintiff's assertions that the Account Application is not authenticated or admissible are meritless. Plaintiff never asserts that the Decedent's signature on the Account Application is not his. But even if the Court finds it cannot consider the Account Application without a declaration from Wells Fargo, it can nevertheless find that Decedent accepted the terms of the Account Agreement, including the Arbitration Agreement. Thus, the Court should grant Wells Fargo's Motion to Compel, compel Plaintiff to submit its claims to arbitration, stay these proceedings, and award Wells Fargo its attorneys' fees and costs.

**A. Exhibit A to Wells Fargo's Motion is the Account Application and any argument to the contrary is absurd.**

Plaintiff does not dispute that Decedent signed the Account Application attached as Exhibit A to Wells Fargo's Motion to Compel. Instead, he asserts that the three pages of the Account Application are separate documents "presented together through nothing more than Bates-stamping…" Resp., p. 7. Plaintiff's assertion is meritless. Exhibit A is one document – the Account Application signed by Decedent to open the Account – consisting of three pages. *See* Mot., Ex. A, p. 1 ("Page 1 of 3"), p. 2 ("Page 2 of 3"), and p. 3 ("Page 3 of 3"). Moreover, each page of the Account Application has a bar code and document identifier, as depicted below.

DSG8921 (9-24 SVP ) 2W02-001724597255-01 Page 1 of 3
Wells Fargo Confidential

DSG8921 (9-24 SVP ) 2W02-001724597255-02 Page 2 of 3
Wells Fargo Confidential

DSG8921 (9-24 SVP ) 2W02-001724597255-03 Page 3 of 3
Wells Fargo Confidential

*Id.* at Ex. A.

Plaintiff further argues that Wells Fargo has not shown Decedent's signature on page 3 of the Account Application "has any connection to the language on page 2. . ." Resp., p. 7. Decedent's signature on page 3 is plainly connected to the text on page 2 in the "Customer Signatures" section of the Account Application. As reflected below, the Decedent signed in the signature box on page 3 captioned "Customer 1 Signature" as part of the "Customer Signatures" section of the Account Application, thereby acknowledging his receipt of the Account Agreement and agreeing to be bound by its terms, and specifically, the Arbitration Agreement.

**Customer Signatures**

Everything I have stated in this application is correct. You are authorized to make any inquiries that you consider appropriate to determine if you should open or maintain the account. This may include ordering a credit report or other report (i.e. information from any motor vehicle department or other state agency) on me. **I have received a copy of the applicable account agreement and the privacy policy (each may be amended from time to time) and agree to be bound by their terms.** I also agree to the terms of the dispute resolution program described in the foregoing agreements. **Under the dispute resolution program, our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge.**

DSG8921 (9-24 SVP ) 2W02-001724597255-02 Page 2 of 3
Wells Fargo Confidential

Consumer Account Application

Customer 1 Name
JAMES B MUSKAL

Customer 1 Signature
JAMESBMUSKAL

☐ Submit manually
☐ Signature not required

Date:
11/19/2024

*See* Mot., Ex. A at pp. 2-3.

Finally, Plaintiff's argument that it is unknown what Decedent reviewed and agreed to when he signed the Account Application has no bearing on whether he agreed to the Arbitration Agreement. *See* Resp., p. 8. "It is 'a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them.'" *Conway v. Done Rite Recovery Services, Inc.*, 14-CV-5182, 2015 WL 1989665, at *4 (N.D. Ill. Apr. 30, 2015). Decedent explicitly agreed to be bound by the terms of the Account Agreement and the Arbitration Agreement, regardless of whether he reviewed the text of the Account Application. *See id.* ("In the absence of any claim that the signature is not his, i.e., that it is a forgery, the Court does not need further discovery to authenticate the agreement or determine that Plaintiff is bound by it.").

**B. The Account Agreement effective November 6, 2024 is the applicable agreement between the parties.**

Plaintiff argues that the Court does not have any evidence showing the Account Agreement attached as Exhibit B to the Motion is the applicable agreement between the parties. Plaintiff further speculates that Decedent "could have actually received a subsequent agreement perhaps dated November 17, 2024." Resp., p. 9. But Plaintiff ignores the exhibits attached to its own Complaint, which conclusively show that the applicable agreement between the parties at the time the Account was opened was the Account Agreement effective November 6, 2024 (attached as Exhibit B to Wells Fargo's Motion).

Exhibits B and G to the Complaint are the Decedent's monthly account statements for the Account, both of which clearly identify the Account Agreement effective November 6, 2024 as the applicable agreement between the parties. *See* Compl., Ex. B at pp. 5-6 and Ex. G at p. 7. Moreover, Decedent was provided a link to access the Account Agreement in both of his monthly statements. *See id.* As shown in Exhibit G, Decedent's monthly statement dated January 31, 2025 contained the following:

**Important Account Information**

**Wells Fargo Deposit Account Agreement: Changes To Consumer Arbitration Agreement And Other Dispute Resolution Provisions**

Effective November 6, 2024, we are updating the Wells Fargo Deposit Account Agreement. This includes changes to the dispute resolution provisions. Wells Fargo greatly values and appreciates its relationships with its customers. These changes are designed to ensure that in the unlikely event that a dispute arises between us, that there are streamlined procedures in place to ensure a fair and efficient process in arbitration.

The changes to the arbitration agreement applicable to Consumer Accounts ("Arbitration Agreement" or "Agreement") can be found at pp. 38-39 of the Wells Fargo Deposit Account Agreement, including: (a) the party initiating arbitration must sign the arbitration demand and include certain information in its demand; (b) any party may request to have the arbitration conducted by a video or in-person hearing or through written submissions, with certain exceptions; (c) like in federal court, the arbitrator may issue sanctions or order cost shifting under certain circumstances consistent with the Federal Rules of Civil Procedure; (d) all issues are for the arbitrator to decide, except that issues relating to whether an arbitration agreement exists or whether a dispute falls within that agreement, or whether the agreement is enforceable, are for a court to decide; and (e) a small claims court will determine whether a dispute falls within its jurisdiction if a party chooses to have a claim brought to such a court.

The updates also include changes to the Additional Terms and Services, located at pp. 42-43 of the Wells Fargo Deposit Account Agreement, including: (a) modifications to the class action waiver applicable in arbitration and litigation; and (b) the addition of a venue provision noting that if the Arbitration Agreement is ever deemed not applicable, then, except for disputes brought in small claims court, the parties consent to the jurisdiction of the state or federal courts in the state whose laws govern the consumer's account.

The revised Deposit Account Agreement, effective November 6, 2024, is available at www.wellsfargo.com/online-banking/consumer-account-fees/, by calling the Bank at the number listed on your account statement, or by visiting a branch.

---

Compl., Ex. G at p. 7.[1] A party moving to compel arbitration must "produce evidence sufficient to support a finding that the [arbitration agreement] is what the proponent claims it is." *Conway*, 2015 WL 1989665, at *3. However, a proponent "is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *Id*. Accordingly, the Court can find that (1) the Account Agreement effective November 6,

[1] The Court can take judicial notice that the link in the statements attached as Exhibit B and G to the Complaint is a link to the Consumer Account Disclosures page of Wells Fargo's website. *See* https://www.wellsfargo.com/online-banking/consumer-account-fees/ (last visited 3/20/2026); Fed. R. Evid. 201(b) ("[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *R.S.B. Ventures, Inc. v. F.D.I.C.*, 514 Fed. Appx. 853, 857 (11th Cir. 2013) ("we take judicial notice of the information found on the FDIC's website."); *Trump v. Clinton*, 626 F. Supp. 3d 1264, 1302 n.10 (S.D. Fla. 2022) (taking judicial notice of governmental resource).

2024, was the Account Agreement in effect at the time the Account was opened, and (2) the Decedent was provided a link to access the Account Agreement from the Complaint.

**C. The Court has sufficient evidence to show Decedent agreed to be bound by the terms of the Account Agreement even without considering the Account Application.**

Even if this Court finds it cannot consider the Account Application absent a declaration from a Wells Fargo representative,[2] the Court has sufficient evidence to show the Decedent agreed to be bound by the terms of Arbitration Agreement. The FAA does not require an arbitration agreement to be signed to be enforceable. *See, e.g., Seawright v. Am. Gen. Fin. Services, Inc.*, 507 F.3d 967, 978 (6th Cir. 2007) ("arbitration agreements under the FAA need to be written, but not necessarily *signed*.") (emphasis in original); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000) ("a party can agree to submit to arbitration by means other than personally signing a contract containing an arbitration clause."); *Med. Dev. Corp. v. Indus. Molding Corp.*, 479 F.2d 345, 348 (10th Cir. 1973) ("Decisions under the Federal Arbitration Act, 9 U.S.C. § 2, . . . have held it not necessary that there be a simple integrated writing or that a party sign the writing containing the arbitration clause. . . . All that is required is that the arbitration provision be in writing."). It is well-settled law that a party can agree to an arbitration agreement through their conduct. *See, e.g., Perik*, 2011 IL App (1st) 093088-U, ¶ 35 ("By continuing to use her account at Chase, Perik acquiesced to the 2006 Agreement's terms, which included changes to the arbitration provision."); *Boomer v. AT & T Corp.*, 309 F.3d 404, 416–17 (7th Cir. 2002) (plaintiff's continued use of defendant's services constituted his acceptance of arbitration agreement); *Madacsi v. Citibank, N.A.*, No. 9:24-CV-81294, 2024 WL 4723123, at *2

---

[2] To cure any technical defect in its Motion to Compel, Wells Fargo has contemporaneously moved for leave of Court to amend its Motion to Compel to add an authenticating declaration. Dkt. 19, 20.

(S.D. Fla. Nov. 8, 2024) (granting motion to compel arbitration and finding plaintiff agreed to the bank's account agreement by opening an account).

As previously set forth, the Court can find that the Decedent received the applicable Account Agreement from the Complaint itself. *See* Compl., Ex. B at p. 6 and Ex. G at p. 7.[3] Moreover, Wells Fargo specifically invited Decedent's acceptance of the terms of the Account Agreement by his conduct, i.e. opening the Account, keeping it open, and using the Account. *See* Mot., Ex. B at p. 2. By keeping his Account open and continuing to use the Account after receiving the Wells Fargo monthly account statement dated December 31, 2024, the Decedent agreed to the terms of the Account Agreement, including the Arbitration Agreement. *See* Compl., Ex. B and Mot., Ex. B at p. 2. Accordingly, the Court can and should find that the Arbitration Agreement is a valid and enforceable agreement between the parties even without considering the Account Application.

## **Conclusion**

There is sufficient evidence in the record for the Court to find that the Arbitration Agreement is a valid, enforceable agreement to arbitrate between the parties. Because Plaintiff does not dispute that the Arbitration Agreement covers the claims at issue, the Court should compel Plaintiff to submit its claims to arbitration. In the alternative, the Court should grant Wells Fargo's Motion for Leave to File Amended Motion to Compel Arbitration, To Stay Litigation, for Attorneys' Fees and Costs, and to Hold the Deadline to Respond to the Complaint in Abeyance.

[3] Both monthly account statements also explicitly refer to the Arbitration Agreement contained in the Account Agreement. *See* Compl., Ex. B at pp. 5-6 and Ex. G at p. 7.

Dated: March 20, 2026

By: /s/ Matthew Scot Payne
Attorney for Defendant Wells Fargo Bank, N.A.

MATTHEW SCOT PAYNE
mpayne@foxrothschild.com
Fox Rothschild LLP
321 N. Clark Street, Suite 1600
Chicago, Illinois 60654
Phone (312) 517-9200