**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STEVEN MUSKAL, as Independent Administrator of the Estate of James B. Muskal,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Civil No. 1:25-cv-15478<br><br>Judge Thomas M. Durkin |

**PLAINTIFF'S RESPONSE OPPOSING THE MOTION FOR LEAVE TO FILE AMENDED MOTION TO COMPEL ARBITRATION**

This is an action for violations of the Electronic Funds Transfer Act for Wells refusal to reimburse for unauthorized Jamaica transfers on Muskal's ATM/debit card for a period of 12 weeks, until Muskal's death in 2025 at age 86. The transactions started while Muskal was hospitalized, and they also continued after his death for many days.

After Wells was granted an uncontested two-week extension to respond to the Complaint, Wells moved to compel arbitration in a motion with two exhibits. That motion has now been fully briefed. Plaintiff filed a 12-page Response brief opposing on four separate grounds, two of which involved authentication and admissibility of the Exhibits.

In the instant Motion for Leave to file an Amended Motion, Wells moves to add a new affidavit and new arguments. This new affidavit's declarations not only authenticate the Exhibits, but they also assert numerous additional evidentiary declarations to oppose other arguments in plaintiff's Response brief. Such "sandbagging" to present additional evidence after the non-movants Response is specifically prohibited under the Rules of Civil Procedure and Seventh Circuit precedents, and thus the Motion for Leave must be denied.

## I. Procedural Background

### A. The fully briefed Motion to Compel Arbitration

After service of summons, Wells response to the Complaint was due on January 30, 2025. Muskal consented to Wells' request to have two additional weeks to respond. This Court entered an order granting Wells uncontested motion for an extension of time, holding in its January 30 Minute Order: "Defendant is to respond to the Complaint by 2/13/2026."

On February 13, 2026, Wells filed its Motion to Compel Arbitration. The Wells Motion claims that Muskal agreed to a contract which included an arbitration provision on page 38 of an account agreement, based on the Motion's Exhibit A account application and an Exhibit B (unsigned) account agreement.

On March 6, 2026, Muskal filed its 12-page Response in opposition which is attached as Exhibit A, and which plaintiff incorporates herein. The Response states: "the Motion fails to satisfy its burden of proof for four independent and separate reasons which are all individually sufficient to require denial of this Motion: (1) there is no authentication of Motion Exhibits A and B to make them admissible; (2) there is no stated exception to the hearsay rule to make the hearsay in Exhibits A and B admissible; (3) there is no evidence that Muskal's signatures evidenced agreement to an account contract; and (4) there is no evidence of the specific contract and arbitration provision which Muskal purportedly agreed to." Resp. at 2.

Importantly for this Motion for Leave, the Response's third and fourth arguments above did not depend on the authentication or admissibility of Exhibits A and B. As stated for the third argument: "Even assuming Exhibits A and B were authentic and that the evidence was not barred as hearsay, Wells still has not provided sufficient proof that

Muskal agreed to any contract by his signatures, as there is no proof of a connection from his Exhibit A signatures to any agreement to be bound by a contract." Resp. at 5. And for the fourth argument, the Response states: "Lastly, even if all the Wells exhibits were admissible, and even if the Exhibits showed that Muskal agreed to some deposit contract, the Motion would still fail because Wells has not provided any evidence or proof that Exhibit B is the actual agreement that was entered into between the parties." Resp. at 8-9.

On March 20, 2026, Wells filed a Reply in Support of its Motion to Compel Arbitration. The seven-page Reply addresses the four arguments in the Wells Response.

### B. The new Motion for Leave to file a proposed Amended Motion to Compel Arbitration.

Also on March 20, 2026, Wells filed its Motion for Leave to File Amended Motion to Compel Arbitration, and a Memorandum in Support. The Motion for Leave attaches a proposed Amended Motion to Compel Arbitration and proposed Memorandum in Support. The proposed Memorandum in Support contains a new affidavit to support the Motion to Compel that was not in the original motion filing. The Memorandum for Leave does not assert any excusable neglect or good cause for allowing leave to amend, and it cites this Court's inherent authority as sufficient to allow such leave.

The Memorandum for Leave asserts that plaintiff's Response arguments in opposing the arbitration motion were "only challenging the authenticity and admissibility of the Consumer Account Application." (Memo at 2). As shown above, plaintiff's third and fourth Response arguments did not depend on the authenticity or admissibility of the exhibits at all, and these arguments in parts I.C and D totaled six pages of the Response.

The Wells Memorandum for Leave also asserts that its proposed new affidavit in the proposed Amended Motion to Compel is only "to cure any purported technical

deficiencies with the Motion to Compel." (Memo at 2). And while the new affidavit has a few paragraphs to address the Exhibits' authenticity and admissibility as a business record (¶¶ 3-4 and last sentence of ¶10), the vast majority of the affidavit are declarations of brand new evidence to support the Motion to Compel that have nothing to do with authenticity or admissibility of the Exhibits. Perhaps the most obvious example is paragraph 11: "Decedent received a copy of the Account Agreement as part of the New Account Kit emailed to him on November 19, 2024. Decedent accepted the New Account Kit before the Account was opened." (Proposed Memo Ex. 1 ¶11). This brand new assertion that the decedent was emailed the Agreement, and accepted it, is manifestly not merely a "cure" of a "technical deficiency."

As further detailed in Argument Part II below, the following affidavit paragraphs, as with ¶11, are all declarations of completely new evidence to support the Motion to Compel that have nothing to do with the authenticity or admissibility of the Exhibits: ¶¶ 6, 8, 9, 10 (first sentence), 11, 12, 13, 14, 15, and 16. Wells has presented all this new evidence in an attempt to oppose plaintiff's Response arguments I.C and D – the two arguments which have nothing to do with the authenticity or admissibility of the Exhibits.

The Motion for Leave's affidavit also attaches a new amended Account Agreement exhibit different from the original Motion to Compel. The first Motion's purported Account Agreement totaled 44 pages, while the Amended Motion's Account Agreement adds 28 pages of addenda. The Motion for Leave fails to inform the Court that Wells is amending its Account Agreement Exhibit by adding 28 pages, and accordingly the Motion fails to provide an explanation for this substantial change or any reason for leave to do so.

## I. The Federal Rules prohibit granting leave to file an amended motion presenting additional evidence without at least a showing of excusable neglect, if not good cause.

### A. The Seventh Circuit expressly held in *Wallrich* that there is no "second bite of the apple" to present additional evidence to support arbitration.

The party seeking to compel arbitration has the burden to establish that an agreement to arbitrate exists. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). The evidentiary standard applicable for determining whether to compel arbitration is analogized to the standard needed as required at summary judgment. *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 618 (7th Cir. 2024). Accordingly, the motion practice to compel arbitration is treated with the same posture as motion practice for summary judgment. *Wallrich* at 619.

The Seventh Circuit in *Wallrich* recently addressed the exact issue here of whether a party should get a second chance to present additional evidence to support compelling arbitration even after the non-movant's Response -- and the answer was emphatically no. *Wallrich* held: "The consumers alternatively argue that we should remand the case to allow them to present additional evidence. But the summary judgment stage, which our posture is akin to, does not allow second chances." *Id.* at 619; *citing Bazemore v. Jefferson Cap. Sys., LLC,* 827 F.3d 1325, 1333 (11th Cir. 2016) (no "second bite of the apple" to present additional evidence after losing initial motion to compel arbitration). In reversing the district court, *Wallrich* concluded: "The consumers had the opportunity to present their evidence, and they failed to do so." *Id.* (reversing district court because movants "failed to meet their evidentiary burden in proving the existence of an arbitration agreement").

Pursuant to *Wallrich,* this Court must also deny the *Wells* attempt to present additional evidence in support of compelling arbitration, especially after the first motion is already fully

briefed. Every party moving for summary judgment (or arbitration) would love to have a free new shot after seeing the non-movant's response brief, where the movant could refile its Motion and present additional evidence along with a brand new Memorandum in Support using such new evidence. But *Wallrich* expressly prohibits such repeated motion practice and sandbagging in either a summary judgment motion or – as in *Wallrich* -- a motion to compel arbitration.

### B. The Motion for Leave must be denied under F.R.Civ.P. Rules 6 and 16 where there is no excusable neglect or good cause for Wells' initial failure to present all its evidence, and the Federal Rules and case law prohibit this sandbagging with new evidence after the Response brief.

The *Wallrich* holding follows the principles of F.R.Civ.P. 6 and 16 for motion practice. These Rules prohibit allowing leave for an amended motion after the scheduled deadline without good cause, as such leave sandbags the non-movant by presenting additional evidence after the non-movant has already expended effort for its Response to the initial motion.

#### 1. Rule 6 requires denial of the Motion for Leave

As to Rule 6, this Court ordered the Wells Motion filed by February 13, 2026, after the Wells uncontested motion for an extension of time was granted. Rule 6(c)(2) states: "Any affidavit supporting a motion must be served with the motion." Wells initial motion lacked the new proposed affidavit and thus did not comply with Rule 6(c)(2), and Wells now requests to submit an amended motion after the deadline with the new affidavit. Rule 6(b) states:

> (b) Extending Time.
>
> (1) In General. When an act may or must be done within a specified time, the court may, for good cause, extend the time ***
>
> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

Accordingly, where Wells has cited no good cause or excusable neglect for its failure to follow Rule 6(c)(2) and submit the affidavit at the deadline when its Motion was due, under

Rule 6(b) its Motion for Leave to file a new evidentiary affidavit must be denied. Moreover, compliance with Rules 6(b) and 6(c)(2) is particularly appropriate in this matter where plaintiff has already consented to Wells' counsel's request for a two-week extension of time to file its Motion to Compel in response to the Complaint.

This issue was directly addressed in the arbitration context in *Horvath v. Apria Healthcare, LLC*, 2019 U.S. Dist. LEXIS 192327 (N.D.Ill.). As also discussed in plaintiff's Response opposing the Motion to Compel, the *Horvath* defendant submitted two new affidavits in its reply brief to support its arbitration motion. Judge Gettlemen cited Rule 6(c)(2) to hold that the belated affidavits were "procedurally improper", and *Horvath* struck the entire reply brief due to such impropriety. *Id* at *3. *Horvath* expressly held, "'A reply brief is for replying'—not for sandbagging." *Id.*

In this matter, defendant Wells has sandbagged plaintiff in the exact same fashion by not complying with Rule 6(c)(2) and filing its affidavit with its initial motion. And as in *Horvath*, defendant Wells seeks to submit a new affidavit after plaintiff's Response brief and after the Motion deadline, which will sandbag plaintiff by resenting new evidence and arguments that plaintiff could not reply to in its filed Response. As in *Horvath*, defendant's belated attempt to provide a supporting affidavit to its Motion is completely "procedurally improper" under Rule 6(c)(2). Without a Rule 6(b) justification of good cause or excusable neglect to resubmit the motion to compel, *Horvath* requires the denial of this Motion for Leave with its new affidavit after plaintiff filed its Response brief based on the original motion.

As in *Wellrich* and *Horvath*, numerous other precedents also prohibit precisely the kind of sandbagging in motion practice that defendant Wells is attempting to do here by presenting new evidence and arguments after plaintiff's filed Response brief. Conduct which is

sandbagging of one's opponent is in all its forms forbidden. *Sheehan v. City of Markham*, 282 F.R.D. 428, 430 (N.D. Ill. 2012) (motion denied where authority not presented in Motion itself). "'Motion practice is not a series of trial balloons where you submit what you think is sufficient, you see how it flies, and if it does not, you go back and try again.'" *Yost v. Carroll*, 2022 U.S. Dist. LEXIS 209483 at *5, 2022 WL 17082588, *quoting Hansel 'N Gretel Brand, Inc. v. Savitsky*, 1997 WL 698179 (S.D.N.Y.1997).

*Yost* also specified the two prejudicial outcomes to the non-movant from such motion practice of trial balloon sandbagging with subsequent amended motions presenting new evidence. First, plaintiff has already expended time and resources in its 12-page Response brief based on the evidence in defendant's initial motion, but now much of that effort and expense will have been wasted if plaintiff is forced to address a new amended motion containing new evidence. *See Yost* at *4 (denying motion for leave to amend where plaintiff had already "completed a lengthy, three-part filing" to the initial motion). Part II below details all the new evidence that plaintiff's new Response will have to address if the Motion for Leave is granted.

Second, plaintiff will also be prejudiced by the additional unnecessary delay to resolve this forum choice issue, particularly where plaintiff has already consented to defendant's initial requested two-week extension. As *Yost* concluded in denying leave to file an amended motion after the "trial balloon" initial motion: "'If that is the way the system worked we would have motion practice going on forever.'" *Id., quoting Hansel, id.*

**2. Rule 16 also requires denial of the Motion for Leave**

The above Rule 6 analysis is the same if the Motion for Leave were considered under Rule 16, after this Court scheduled its February 13, 2026, deadline for the Motion. Rule 16(b)(4) states: "Modifying a Schedule. A schedule may be modified only for good cause and with the

judge's consent." The primary consideration when making a good-cause determination is the diligence of the party, which the movant bears the burden to establish. *Experience Based Learning, Inc. v. Hanover Ins. Co.,* 2019 LEXIS 105284 *12-13 (N.D. Ill.), 2019 WL 2576390, *citing Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011). Lack of undue prejudice to the nonmoving party is insufficient to establish good cause under Rule 16(b). *Experience*, *id.*,

Wells has not presented any good cause or shown diligence to grant its Motion for Leave, and thus it must be denied under Rule 16 as well. Moreover, plaintiff has actually suffered undue prejudice as shown above by already expending time and resources in its 12-page Response brief that would be wasted effort and expense if plaintiff is forced to address a new amended motion containing new evidence. *See Yost* at *4 (denying motion for leave to amend).

### C. Defendant has presented no valid basis or precedents to support its Motion for Leave to file an Amended Motion which presents new evidence after plaintiff has already filed its Response.

Defendant's Motion for Leave has not cited any of the applicable Federal Rules of Civil Procedure here -- such as Rule 6(c)(2) requirement for the initial motion to contain any affidavits, or the Rule 6(b) requirements for extending time to refile a motion after the initial time has expired, or the Rule 16(b) requirements for modifying a filing schedule to refile a motion after the initial time has expired.

Without such reliance on the Federal Rules, defendant's Motion for Leave only cites the Court's "inherent authority to manage its own docket." Memo at 2. However, the defendant's instant Motion for Leave is not merely about the Court's docket, which involves setting a schedule for future activities and deadlines. Instead, defendant seeks leave to file an Amended Motion with new evidence well past the already scheduled deadline for such Motion. Moreover, defendant seeks leave to file such Amended Motion with new evidence after its original motion

has already been fully briefed. As held by *Wellrich* and *Horvath*, this Court does not possess such "docket inherent authority" to allow such sandbagging after a motion has been fully briefed, and this Court must follow *Wellrich* and *Horvath* and applicable Rules 6(b), 6(c)(2), and 16(b) to deny this Motion for Leave.

Moreover, as the Court does not possess the inherent authority that defendant asserts, unsurprisingly none of defendant's cited precedents are apposite or actually involve allowing leave to refile an amended motion after briefing that presents additional evidence, as defendant seeks to do here. The *Dietz* case did not involve a refiled motion – it allowed a trial court to recall a discharged jury. The *Williams* case allowed a court to deny meritless motions without awaiting a response. *Nirvana* denied a cross-motion without prejudice as moot where "This issue has not been fully briefed" – and as such the *Nirvana* court did not allow or consider an amended motion filing after a fully briefed original motion. *Nirvana, L.L.C. v. P'ships*, 2022 U.S. Dist. LEXIS 253748, *13, 2022 WL 22886568. The *Whitfield* case involved disallowing evidence. None of these "inherent authority" cases have anything to do with the issue here of attempting to refile an amended motion that has already been fully briefed, and thus these precedents are irrelevant.

Defendant next cites a Rule 15(a)(2) case for amending pleadings – *Wood* – to argue that this Court should freely give leave to amend a pleading. However, motions are not pleadings as defined by Rule 7(a). *See Heise v. Olympus Optical Co*., 111 F.R.D. 1 (N.D. Ind. 1986). Pleadings come separately under the rubric of Rule 7(b), and the applicable Rules of Procedure here for submitting subsequent amended motions are Rules 6 and 16 as shown above.

The next cite is *Foman,* which allowed a Rule 59 motion to vacate dismissal because it was "contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities." *Foman v. Davis*, 371 U.S. 178, 181 (1962). However, the instant Motion to Compel *does not involve a decision on the merits – it is merely adjudicating a forum selection clause.* *Foman* illustrates precisely what this case is not about, and where the only issue at stake in this Motion to Compel is the forum where the merits will eventually be heard, the Rules of Civil Procedure for efficient and fair motion practice on this Motion to Compel have their greatest force as expressly held by *Wellrich* and *Horvath.*

Finally, defendant cites *Moses* that federal policy favors arbitration agreements, a case noting that such policy favors finding issues arbitrable under the scope of an agreement. But such policy favoring a wide scope for arbitrable issues is inapposite to the issue here of whether the parties entered into an agreement at all. Thus, this Court must follow the Seventh Circuit precedents of *Wallrich* and *A.D.* for the determination of that issue.

Accordingly, defendant has failed to cite a single relevant precedent (or Federal Rule[1]) in support of its Motion. There are no precedents anywhere that allow a movant leave to file an amended motion to present additional evidence after the initial motion has been fully briefed, and this Court should follow *Wellrich* and *Horvath* to deny this motion.

Defendant's other arguments are also just as meritless. Defendant claims that plaintiff will not suffer any prejudice. But as shown above and in *Yost*, plaintiff has already expended time and resources into briefing the initial motion, and all that will be wasted if a new amended motion is allowed, as well as suffer undue delay by this extension of the motion practice solely

[1] Defendant notes that Rule 7(b)(1) does not explicitly limit a Court's discretion, but the Rule does not address amending a motion – it simply states: "(1) In General. A request for a court order must be made by motion."

due to defendant's noncompliance with Rule 6(b)(2). Defendant also claims without citation to any precedent that allowing its Motion for Leave "will serve the interests of justice and judicial economy." (Memo at 2). On the contrary, the interests of justice and judicial economy are best served by mandating a movant comply with Rule 6(b)(2) so that only one round of briefing is necessary, and then the non-movant needs to respond to only one set of evidence in one Motion. Thus, the interests of justice and judicial economy require courts to prohibit the attempted sandbagging which defendant seeks here, and *Yost, Wellrich* and *Horvath* mandate denial of this motion.

## II. Even if the Federal Rules did allow this Court to grant leave, it should be denied here where Wells is sandbagging with new evidence and arguments, and where Wells lacks candor in presenting its Motion.

Defendant argues that this Court "should exercise its discretion to allow Wells Fargo to file an Amended Motion to Compel to cure any technical or procedural deficiencies with the Motion." (Memo at 3). As shown in Part I above, this Court does not have such discretion under *Wellrich* and the Federal Rules of Civil Procedure. However, even if this Court did have discretion to allow defendant's Motion "to cure any technical or procedural deficiencies", the Court should still deny the actual Motion for Leave here which mostly contains an abundance of new evidence rather than a cure of technical deficiencies.

### A. The Amended Motion's Affidavit contains a vast amount of new evidence and arguments.

Defendant's claim that the affidavit's declarations are simply "to cure any technical or procedural deficiencies" is completely false. Instead, as shown below, the declarations assert a vast amount of new evidence which have nothing to do with the authentication or admissibility of the Exhibits at issue – but which defendant deems vital to attempt to

counter the final two arguments of plaintiff's Response brief which had nothing to do with exhibit authentication or admissibility.

Paragraph 6 asserts that Muskal signed an Exhibit, and paragraph 8 asserts Muskal "acknowledge and agreed" to an Exhibit. Paragraph 9 asserts: "All account applicants receive a copy of the applicable account agreement after opening the account." None of these declarations involve authentication of the Exhibits or curing technical difficulties.

The first sentence of Paragraph 10 asserts that Exhibit 2 was the applicable agreement "in effect" at the time. Paragraph 11 asserts: "Decedent received a copy of the Account Agreement as part of the New Account Kit emailed to him on November 19, 2024." Paragraph 11 also asserts: "Decedent accepted the New Account Kit before the Account was opened." None of these declarations involve authentication of the Exhibits or curing technical difficulties.

Paragraph 12 asserts that "the relationship between decedent and Wells Fargo was governed by the account agreement." Paragraph 13 asserts: "Customers are notified of changes and updates to the account agreement by various means." Paragraph 14 asserts that Exhibit 2 "was the only agreement in effect." Paragraph 15 asserts that the Account Agreement contains an Arbitration Agreement that governs the resolution of disputes between Decedent and Wells Fargo." Paragraph 16 asserts that the Agreement is binding on decedent's executors. Yet again, none of these declarations involve authentication of the Exhibits or curing technical difficulties.

Finally, not only does the affidavit present the above additional evidentiary declarations, the affidavit attaches a brand new Exhibit 2 with an additional 28 pages of addenda. This large enhancement of an exhibit is also not authentication or procedural.

### B. Defendant's lack of candor in presenting and describing this Motion is an additional reason to deny the Motion.

As shown above, defendant's repeated claims that its Motion for Leave is merely to "cure any technical defect" with an "authenticating declaration" (Mot. To Compel Reply at page 5 footnote 2) is entirely false. Wells is misdescribing its Motion for Leave and its new proposed affidavit in a desperate effort to put additional evidence before this Court to counteract plaintiff's dispositive Response brief arguments I.C and D, which had nothing to do with authenticity or admissibility.

Accordingly, this Court should exercise any discretion involved here against Wells for such lack of candor, where the "litigation conduct smacks of a bad-faith (if clumsy) attempt to deceive the court." *Horvath* at *6-7, 2019 WL 5725378. As held by another court – "lacking explanation for his delay, coupled with his lack of candor" necessitates to a court to find that a party has not met its burden. *Hammock v. Res-Care, Inc*., 2021 U.S. Dist. LEXIS 205562, *5-6. Defendant's conduct here is precisely what a party is not supposed to do – first failing to comply with Rule 6(b)(2), and then gaslighting this Court that its tardy new proposed affidavit is not presenting new evidence. A "lawyer who plays dirty by sneaking in new evidence disserves his clients and tarnishes his credibility" (*Horvath* at *3-4, 2019 WL 5725378), and for this additional reason the Motion for Leave should be denied.

### C. Plaintiff will have to address numerous new issues in its new Response if this Court mistakenly grants the Motion for Leave.

Because the proposed Amended Motion presents an avalanche of new evidence, should this Court mistakenly grant the Motion for Leave, plaintiff will have to file an extensive new Response brief to address all the new issues presented by defendant's new

affidavit and new evidence. Those new issues would include, but not be limited to, the following: (1) how the affiant purportedly personally knows whether Muskal "received a copy of the applicable account agreement after opening the account"; (2) how the affiant purportedly personally knows that "Decedent received a copy of the Account Agreement as part of the New Account Kit emailed to him on November 19, 2024"; (3) how the affiant purportedly personally knows that "Decedent accepted the New Account Kit before the Account was opened"; (4) how exactly did decedent "accept" the new account kit; (5) why has defendant failed to provide evidence of this purported actual email to decedent that was purportedly opened and accepted; (6) even if the Account Application is a three-page electronic application on Wells computers, was Muskal ever shown the actual three-page document prior to signing his electronic signature on a signature box; (7) how is the arbitration provision visible enough to show actual agreement when it is on page 38 of a 92-page document sent to a new customer, even presuming Muskal ever received it.

Fortunately, none of this new Motion to Compel Arbitration briefing will be necessary if this Court follows *Wellrich*, *Horvath*, and the Federal Rules of Civil Procedure to deny the Motion for Leave. For all the foregoing reasons, plaintiff respectfully requests that this Court deny the Motion for Leave, and pursuant to *Wallrich* this Court should also deny the Motion to Compel Arbitration with prejudice.

By:____/s/ Michael Steigmann_____
Attorney for Plaintiff

Michael Steigmann
150 S. Wacker Dr. #2400
Chicago, Illinois 60601
(312) 833-5945

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STEVEN MUSKAL, as Independent Administrator of the Estate of James B. Muskal,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Civil No. 1:25-cv-15478<br><br>Judge Thomas M. Durkin |

**PLAINTIFF'S RESPONSE OPPOSING THE MOTION TO COMPEL ARBITRATION**

**Introduction**

This is an action for violations of the Electronic Funds Transfer Act and a state-law claim for negligence, due to Wells Fargo's refusal to reimburse for unauthorized Jamaica transfers on the James Muskal ("Muskal") account's ATM/debit card for a period of 12 weeks, until Muskal's death in 2025 at age 86. As stated in the Complaint, the transactions started while Muskal was hospitalized in Chicago – purportedly with use of his ATM card in rural Jamaica -- and continued after his death for many days. The transactions are obviously fraudulent – seven purchases over seven days at an auto store for $20,000; six purchases over three days for $4,600 at a hardware store; ATM withdrawals of $20,000 in January, $12,000 in gambling purchases, etc. Meanwhile, Muskal stayed in Chicago to comfort his ill wife who passed away in February 2025, and he was not even contacted by Wells Fargo to alert him of the potential fraud. The Wells Fargo claim that Muskal authorized these Jamaica transactions is baseless, and has resulted in this lawsuit.

EXHIBIT A

In response to the Complaint, Wells has filed a Motion to compel arbitration. Wells claims that Muskal agreed to a contract which included an arbitration provision on page 38 of an account agreement, based on the Motion's Exhibit A account application and an Exhibit B (unsigned) account agreement.

As shown below, the Motion fails to satisfy its burden of proof for four independent and separate reasons which are all individually sufficient to require denial of this Motion: (1) there is no authentication of Motion Exhibits A and B to make them admissible; (2) there is no stated exception to the hearsay rule to make the hearsay in Exhibits A and B admissible; (3) there is no evidence that Muskal's signatures evidenced agreement to an account contract; and (4) there is no evidence of the specific contract and arbitration provision which Muskal purportedly agreed to.

## I. The Motion does not meet its burden of proof that Muskal agreed to an arbitration provision, for four separate and independent reasons which each require denial of the Motion.

### A. There is no authentication of the Wells exhibits as required under Fed. R. Evid. 901(a), and thus no admissible proof of any agreement to arbitrate.

The party seeking to compel arbitration must establish that an agreement to arbitrate exists. *Pearson v. United Debt Holdings, LLC*, 123 F. Supp. 3d 1070, 1073, (N.D.Ill. 2015); *Gen. Ass'n of Regular Baptist Churches v. Scott*, 549 F. App'x 531, 533 (7th Cir. 2013). The first reason that the Motion fails is that it fails to authenticate its exhibits such that they are admissible evidence to support the Motion.

In determining authenticity, a court follows Fed. R. Evid. 901(a), which requires evidence sufficient to support a finding that the matter in question is what its proponent claims. *Pearson, id., citing Smith v. City of Chicago,* 242 F.3d 737, 741 (7th Cir. 2001). Only after the proponent has introduced such evidence document does the burden shift to the opponent of the

evidence to rebut the evidence of authenticity. *Id.* The failure to properly authenticate evidence is sufficient to preclude the court from considering it. *Pearson, id., citing Estate of Brown v. Thomas*, 771 F.3d 1001, 1005-6 (7th Cir. 2014). Compulsion of arbitration is inappropriate where the proponent of arbitration fails to produce evidence that an agreement to arbitrate existed. *Pearson, id., citing Scott*, 549 F. App'x at 532.

In this matter as in *Pearson*, the Motion must be denied where its attached documents have no authentication to render them admissible, and thus the Court is without sufficient evidence to find that there exists an agreement to arbitrate. As in *Pearson*, support for the existence of an arbitration provision does not come from the Complaint but is found exclusively in the documents attached to defendant's Motion. And such purported agreements containing arbitrations provisions that are not attached to the complaint are considered "only if the proponent of arbitration properly authenticates the document containing an arbitration provision through an affidavit or otherwise." *Pearson, id. citing Conway*, 2015 U.S. Dist. LEXIS 56980, 2015 WL 1989665; *Achey v. BMO Harris Bank, N.A.*, 64 F. Supp. 3d 1170, 1175-76 (N.D. Ill. 2014. As in *Pearson*, the record is devoid of evidence supporting the conclusion that the document attached to Wells' Motion is an agreement into which Muskal entered into -- the document is not physically signed; no witness affirms any of (1) that the documents were found in Wells' business records, or (2) that they were presented to Muskal when he opened his account, or (3) that the Exhibit A document actually bears Muskal's electronic signature. *See Pearson, id.* And Wells does not argue that the purported agreement constitutes any type of evidence that is self-authenticating under Rule 902 of the Federal Rules of Evidence; nor is there any basis under Rule 902 for Wells to argue to do so.

And as in *Pearson,* plaintiff has not admitted through statements or conduct that the document attached to the Wells motion to compel arbitration is the agreement into which Muskal entered. The proponent of the document bears the initial burden of establishing the authenticity of the document. *Pearson, id. citing Smith*, 242 F.3d at 741; cf. *Estate of Brown*, 771 F.3d at 1006 (failure to authenticate potentially dispositive evidence was "a fatal procedural error").

As they are unsupported by affidavits or other evidence, the Wells assertions in its brief that the document attached is the agreement into which Muskal entered into is insufficient to authenticate the document. "Unsworn statements by attorneys in briefs are not evidence on which the Court can rely." *Pearson, id. citing Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015) ("assertions in briefs are not evidence"); *In re Morris Paint & Varnish Co*., 773 F.2d 130, 134 (7th Cir. 1985) ("Arguments and factual assertions made by counsel in a brief, unsupported by affidavits, cannot be given any weight."). As in *Pearson,* Wells has not carried its initial burden of providing threshold evidence that demonstrates that the documents in Exhibits A and B are what Wells claim they are, and without an agreement to arbitrate, this Court cannot compel arbitration.

**B. The Motion relies on inadmissible hearsay in Exhibits A and B, and thus there is no admissible proof of any agreement to arbitrate for this reason as well.**

Even if Exhibits A and B were authenticated, they are barred as hearsay under F. R. Evid. Rule 801 where Wells has not cited any exception to the hearsay rule. In violation of Rule 801, Wells attempts to offer the statements in Exhibits A and B for the truth of the matter stated therein – specifically as to Muskal that:

> I have received a copy of the applicable account agreement and the privacy policy (each may be amended from time to time) and agree to be bound by their terms. I also agree to the terms of the dispute resolution program described in the foregoing agreements.

Ex. A at 2. As hearsay, this evidence must be barred unless Wells states some exception, which it has not done. *See Stephen v. Home Depot U.S.A.,* 2021 U.S. Dist. LEXIS 208767, *10, (N.D.Ill.). Without any admissible evidence to support its arbitration Motion, "there is no evidence that plaintiff agreed to arbitrate disputes" and the Motion must be denied. *Horvath v. Apria Healthcare, LLC*, 2019 U.S. Dist. LEXIS 192327, *2 (N.D.Ill.).

Nor has Wells Fargo laid the foundation for the business records exception to the hearsay rule. FRE 803(6) requires that a business record be: (1) made at or near the time by someone with knowledge; (2) kept in the course of a regularly conducted business activity; (3) made as a regular practice; and (4) testified to by the custodian or another qualified witness, or certified in compliance with Rule 902(11). Wells Fargo has offered none of this, and thus the hearsay evidence is inadmissible as in *Stephen.* Accordingly, even if the exhibits had been authenticated, they would still be barred by the hearsay rule, and as such arbitration could not be allowed here under *Pearson* and *Horvath* where Wells lacks admissible proof of the arbitration contract that was agreed to.

### C. The Motion does not show proof that Muskal's signatures are connected and show agreement to an account agreement contract.

Even assuming Exhibits A and B were authentic and that the evidence was not barred as hearsay, Wells still has not provided sufficient proof that Muskal agreed to any contract by his signatures, as there is no proof of a connection from his Exhibit A signatures to any agreement to be bound by a contract.

As stated before, the Motion identifies the provision it wishes to enforce on the face of Exhibit A page 2, which states:

> I have received a copy of the applicable account agreement and the privacy policy (each may be amended from time to time) and agree to be bound by their terms. I also agree to the terms of the dispute resolution program described in the foregoing agreements.

The Motion then claims: "Decedent signed the Account Application above and below the text quoted above. Id. at pp. 2-3" (Motion at ¶3), and argues that "The Decedent signed the Account Application acknowledging his receipt of the Account Agreement and agreeing to be bound by its terms." Motion at 5. Unfortunately for Wells, neither of the signatures "above and below" the account agreement text show any purported agreement with that text as is claimed. As shown below, the signature above the text relates to a completely separate different issue – TIN certification. And as to the signature purportedly "below" the page 2 text, the lone untitled electronic signature on Ex. A page 3 is an entirely separate document that could simply be the bank's signature card to verify account transactions, and thus have no connection to the text on page 2 or any account agreements of any kind.

**1. The Page 2 signature does not relate to the text below.**

Starting with the signature above the quoted language on Ex. A page 2, this signature has no connection to the quote below it and thus does not show agreement to be bound by an Account Agreement. Instead, the page 2 signature box is captioned above as "TIN certification signature." Ex. A. Moreover, the signature box appears at the bottom of a partitioned area captioned "Request for Taxpayer Identification Number and Certification" – and the signature box is the only way for the customer to satisfy this

"Request" for "Certification." In addition, a party does not sign above the language to be agreed to, but below to show that the prior language has been reviewed and agreed to. Accordingly, the evidence is overwhelming that the Exhibit A signature above the Account Application.

**2. There is no proof that the lone untitled signature on "page 3" has any relation to the separate document on page 2.**

Wells also fails to show that the lone untitled electronic signature on Ex. A page 3 has any connection to the language on page 2, as page 3 is an entirely separate electronic document from page 2 that has simply been presented together through nothing more than Bates-stamping to presume that this "page 3" document immediately followed page 2 in any fashion. First, the page 3 signature is uncaptioned, unlike the TIN signature on page 2. If Wells wanted to show that the page 3 signature was a signature for "Agreement to Received Account Agreement", then it should have captioned the box accordingly as it did with the TIN signature box on page 2.

Moreover, it is common knowledge that a bank must have a customer's signature on hand – the signature card -- for review of a customer's signature prior to approval of withdrawals, check cashing and other transactions. This page 3 signature could have simply been Muskal's signature card for approval of future bank transactions, rather than an agreement to an Account Agreement. Nothing in Exhibit A shows otherwise, and we know that Muskal must have made a signature for his signature card at some point during his account opening. Or this page 3 signature could have been approval by Muskal to open a savings account the same day – we simply have no idea what this signature was for. Wells has provided no proof that the lone untitled signature on page 3 has anything to do

with the first two pages of Exhibit A, other than to Bates label the lone signature document page as "page 3" of the same exhibit and call it a day.

Nor do we have the hard document of Exhibit A to show that Muskal actually reviewed and agreed to the prior pages of a hard document when he signed the "page 3." It is apparent from the form of Exhibit A that all its separate pages are electronic and electronically signed, including from the failure to check the boxes on page 2 and 3 for "submit manually" for hard copies. There was probably a small electronic signature box for Muskal to manually append his signature as shown on page 3. As to what specifically Muskal was shown before making the page three box signature – we do not know and Wells has not provided any proof. And as to what Muskal believed he was signing for with the page 3 signature – we do not know and Wells has not provided any proof. To satisfy its burden of proof that the untitled uncaptioned lone signature on page 3 has anything to do with the language on page 2 – rather than just be a signature card or opening up a savings account – Wells had to provide additional proof outside of Exhibit A which is not done in the Motion. Wells had the burden to show proof of the process by which this Court could make the determination of what the page 3 signature was for, and it has failed to do so.

As shown above, Wells has not shown that Muskal's two signatures have anything to with an agreement to an Account Agreement and arbitration. Thus, its Motion must be denied as it has not met its burden of proof under *Pearson* and *Horvath*.

**D. The Motion has not presented evidence sufficient to show that Exhibit B is the contract that was given to Muskal or agreed to.**

Lastly, even if all the Wells exhibits were admissible, and even if the Exhibits showed that Muskal agreed to some deposit contract, the Motion would still fail because

Wells has not provided any evidence or proof that Exhibit B is the actual agreement that was entered into between the parties. Without any reference to exhibits or proof of any kind, the Motion merely asserts in unsupported fashion:

> "At the time of the transactions at issue in this case, the Account and the relationship between Decedent and Wells Fargo were governed by the Deposit Account Agreement effective November 6, 2024, together with the Consumer Account Fee and Information Schedule and Consumer Account Addendum (the "Account Agreement"). A copy of the Account Agreement is attached as Exhibit B."

Motion at ¶4. This bare unsupported assertion is insufficient for Wells to meet its burden of proof here as shown below.

After analysis, the exhibits themselves (even if they were admissible) do not prove Wells' unsupported assertion that Exhibit B was the specific contract agreed to by the parties. As to Exhibit B, it is not signed by Muskal. Exhibit B on its face has no indication that Muskal agreed to it, or that he even received it.

And even (incorrectly) presuming that Exhibit A adequately shows with admissible evidence that Muskal both received and agreed with some contract, Exhibit A does not show that such agreed contract is in fact Exhibit B. Exhibit A merely states: "I have received a copy of the applicable account agreement" on November 19, 2024. Exhibit A does not state that Muskal received the specified agreement in Exhibit B which states it is effective November 6, 2024. Muskal could have actually received a subsequent agreement perhaps dated November 17, 2024. Wells itself states on the very first page of the asserted applicable account agreement that "We regularly update this Agreement." Ex. B at 1.

Or Muskal could have actually received a prior agreement perhaps dated effective October 6, 2024, if the rollout of the new November 6 agreement had been delayed for two weeks everywhere or at least in Illinois. New contracts are not always reviewed or circulated at the date initially put on the top – if they are agreed to, that occurs on the date they are presented to, reviewed, and then actually accepted by the parties.

Accordingly, we have no proof that Exhibit B was the specific agreement presented to and accepted by Muskal. Wells has only shown an unsigned pdf of a contract it amends all the time, and yet asks this court to presume that it is the contract agreed to by Muskal only because the unsigned pdf predates the transaction at issue.

Such failure to show proof of the actual agreement of the parties would doom Wells Motion in any circumstances, but such failure is particularly crucial here for enforcement of an arbitration provision. The actual specific agreement language used addressing arbitration – as well as how visibly such language was presented in the actual specific agreement -- is vital to determine if Muskal was adequately informed in a 40+ page purported agreement that he was waiving his right to be heard in this Court. *See e.g., Geske v. Am. Wagering, Inc.*, 2024 U.S. Dist. LEXIS 19538, *7 (Durkin J.) (denying arbitration where insufficient evidence of "reasonable notice" necessary to establish a legally binding agreement).

In summary, while Exhibit B somewhat predates the transaction, that alone is simply not good enough to show that this unsigned pdf was the actual contract between the parties if a contract was agreed to on November 19, 2024. Because Wells has not presented proof that Exhibit B was the applicable contract between the parties, its Motion for arbitration based on a provision in Exhibit B must be denied for this reason as well.

As shown above in Parts A-D, the Motion fails to satisfy its burden of proof for four independent and separate reasons which are all individually sufficient to require denial of this Motion: (1) there is no authentication of Motion Exhibits A and B to make them admissible; (2) there is no stated exception to the hearsay rule to make the hearsay in Exhibits A and B admissible; (3) there is no evidence that Muskal's signatures evidenced agreement to an account contract; and (4) there is no evidence of the specific contract and arbitration provision which Muskal purportedly agreed to. As any one of these reasons require denial of the Motion, and as they are all present here, the Motion must be denied.

**II. This Court should comply with Fed. R. Civ. P. 6(c)(2) -- "Any affidavit supporting a motion must be served with the motion" – and refuse to allow any new affidavits by Wells to support its Motion.**

As shown above, the current Motion fails for four separate reasons, and this Court should follow the express mandate of Fed. R. Civ. P. 6(c)(2) -- "Any affidavit supporting a motion must be served with the motion" -- to disallow any attempts by Wells to cure the Motion's numerous defects with a new affidavit. This issue was directly addressed in *Horvath*, where its defendant submitted two new affidavits in its reply brief to support its arbitration motion. Judge Gettlemen cited Fed. R. Civ. P. 6(c)(2) to hold that the belated affidavits were "procedurally improper", and *Horvath* struck the entire reply brief due to such impropriety and defendant's failure to comply with Fed. R. Civ. P. 6(c)(2). 2019 U.S. Dist. LEXIS 192327 (N.D.Ill.) at *3.

Moreover, compliance with Fed. R. Civ. P. 6(c)(2) is particularly appropriate in this matter where plaintiff has already consented to Wells' counsel's request for a two-week extension of time to file its instant Motion in response to the Complaint. With 35 days to prepare its Motion, it is not a mere oversight that Wells presented a Motion that fails on

four separate grounds. As *Horvath* held, "'A reply brief is for replying'—not for sandbagging." *Id.*

As shown above, after 35 days to prepare, Wells filed a Motion that woefully fails on four separate grounds to meet its burden of proof to impose arbitration and resolve this in its forum of choice. Accordingly, in compliance with Fed. R. Civ. P. 6(c)(2) and *Horvath*, it is time to move on to the merits of this matter without further filings that would violate the mandate of Fed. R. Civ. P. 6(c)(2) that "Any affidavit supporting a motion must be served with the motion." Plaintiff respectfully requests that this Court deny Wells Fargo's Motion to Compel Arbitration with prejudice.

By:____/s/ Michael Steigmann_____
Attorney for Plaintiff

Michael Steigmann
150 S. Wacker Dr. #2400
Chicago, Illinois 60601
(312) 833-5945