**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

STEVEN MUSKAL, as Independent Administrator of the Estate of James B. Muskal,

Plaintiff,

v.

WELLS FARGO BANK, N.A.,

Defendant.

Civil No. 1:25-cv-15478

Judge Thomas M. Durkin

**PLAINTIFF'S RESPONSE OPPOSING THE**
**AMENDED MOTION TO COMPEL ARBITRATION**

## Introduction

This is an action for violations of the Electronic Funds Transfer Act and a state-law claim for negligence, due to Wells Fargo's refusal to reimburse for unauthorized Jamaica transfers on the James Muskal ("Muskal") account's ATM/debit card for a period of 12 weeks, until Muskal's death in 2025 at age 86. As stated in the Complaint, the transactions started while Muskal was hospitalized in Chicago – purportedly with use of his ATM card in rural Jamaica -- and continued after his death for many days. The transactions are obviously fraudulent – seven purchases over seven days at an auto store for $20,000; six purchases over three days for $4,600 at a hardware store; ATM withdrawals of $20,000 in January, $12,000 in gambling purchases, etc. Meanwhile, Muskal stayed in Chicago to comfort his ill wife who passed away in February 2025, and he was not even contacted by Wells Fargo to alert him of the potential fraud. The Wells Fargo claim that Muskal authorized these Jamaica transactions is baseless, and has resulted in this lawsuit.

In response to the Complaint, Wells filed a Motion to Compel arbitration. After plaintiff's Response brief extensively showed that the Motion to Compel was baseless, Wells sought leave to amend its Motion to Compel which was granted by this Court.

In its Amended Motion to Compel, Wells claims that Muskal agreed to a contract which included an arbitration provision on page 38 of an account agreement, based on the Motion's Exhibit A account application which in one part acknowledges receipt of an Exhibit B (unsigned) account agreement and agreement to arbitrate. Exhibits A and B are attached to a declaration by Wells employee Shayne Driscoll.

The Driscoll declaration asserts that Muskal signed the Account Application on November 19, 2024, but fails to assert where he signed it (at home online or at the Bank) or how he signed it (electronically in a small signature box, or on a hard copy), or whether he had reviewed or even seen the full Account Application (including the acknowledgment of receipt of an account agreement) prior to signing the third page of Exhibit A.

As shown below, the Amended Motion continues to fail to satisfy its burden of proof for several reasons which are all individually sufficient to require denial of this Motion: (1) there is insufficient evidence that Muskal's signatures evidenced agreement to the arbitration provision; (2) there is insufficient evidence that Muskal was properly made aware of the arbitration provision even if he had signed the account contract; and (3) there is insufficient evidence of the specific contract and arbitration provision which Muskal purportedly agreed to.

## I. The Motion does not meet its burden of proof that Muskal agreed to an arbitration provision.

Under the FAA, compelling arbitration requires an enforceable written agreement to arbitrate, and a party cannot be required to submit to arbitration any dispute which he has not

agreed so to submit. *Kite v. Dentologie, P.C.*, 2025 U.S. Dist. LEXIS 255631, *2 (N.D.Ill.) (insufficient evidence to show arbitration was agreed), *citing Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 753 (7th Cir. 2017). Whether an agreement to arbitrate has been formed is governed by state-law principles of contract formation, and in Illinois, formation of a contract requires mutual assent which is analyzed using an objective standard. *Kite, id.* The party seeking to compel arbitration must establish that an agreement to arbitrate exists. *Id.; Pearson v. United Debt Holdings, LLC*, 123 F. Supp. 3d 1070, 1073, (N.D.Ill. 2015). Wells' Amended Motion has failed to meet its burden of proof to establish a mutually assented arbitration agreement with Muskal in this matter.

**A. The Declaration's legal assertions are inadmissible and irrelevant.**

Wells' Motion first attempts to have its employee be judge and jury by simply declaring the legal conclusion that Wells seeks here: "The Account Agreement contains a binding Arbitration Agreement requiring the Decedent or his administrators and Wells Fargo to arbitrate any dispute they may have. Id. at ¶¶ 15-16 and Ex. B, pp. 38-39." (Memo at 3). While all parties would like to simply declare that purported agreements are binding and legally enforceable, legal arguments are not admissible evidence in affidavits or declarations. *Chen v. Mayflower Transit, Inc.*, 315 F. Supp. 2d 886, 923 (N.D. Ill. 2004); see also *Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985) ("[L]egal argument in an affidavit may be disregarded."). All the legal arguments and conclusions in the declaration are inadmissible musings of a non-lawyer, and Wells' reliance upon such legal conclusions is likewise meritless.

**B. Wells does not meet its burden of proof to show mutual assent to the arbitration provision.**

In its second try here with its Amended Motion to Compel Arbitration, Wells has still failed to prove that Muskal mutually assented his agreement to an arbitration provision. Wells

has not provided sufficient proof that Muskal agreed to any contract by his signatures, as there is no proof of a connection from his Exhibit A signatures to any agreement to be bound by the arbitration provision – or even that Muskal was shown any arbitration provision before signing.

The Motion identifies the provision it wishes to enforce on the face of Exhibit A page 2, which states:

> I have received a copy of the applicable account agreement and the privacy policy (each may be amended from time to time) and agree to be bound by their terms. I also agree to the terms of the dispute resolution program described in the foregoing agreements.

The Motion then claims: "Decedent signed the Account Application above and below the text quoted above. *Id.* at pp. 2-3" (Motion at ¶3).

However, the Declaration does not assert that Muskal signed the Account Application "above and below the text quoted above." In fact, the Declaration's only assertion regarding the Exhibit A signatures is that Muskal signed the Exhibit A application on November 19, 2024. Decl. at ¶6. The Declaration fails to assert where he signed it (at home online or at the Bank) or how he signed it (electronically in a small signature box, or on a hard copy), or whether he had even seen the full Account Application prior to signing the third page of Exhibit A. As shown below, this is insufficient for Wells to meet its burden.

**1. The Page 2 signature does not relate to the text below**.

Starting with the signature above the quoted language on Ex. A page 2, this signature has no connection to the quote below it and thus does not show agreement to be bound by an Account Agreement. Instead, the page 2 signature box is captioned above as "TIN certification

signature." Ex. A. Moreover, the signature box appears at the bottom of a partitioned area captioned "Request for Taxpayer Identification Number and Certification" – and the signature box is the only way for the customer to satisfy this "Request" for "Certification." In addition, a party does not sign above the language to be agreed to, but below to show that the prior language has been reviewed and agreed to. Accordingly, the evidence is overwhelming that the Exhibit A signature above the Account Application has no relation to the Account Agreement or acknowledgment of arbitration.

**2. There is insufficient proof that the lone untitled signature on Exhibit A "page 3" shows Muskal's assent to the separate language on Exhibit A page 2.**

Wells also fails to prove that the lone untitled electronic signature on Ex. A page 3 has sufficient connection to the language on Exhibit A page 2 to show Muskal's assent to the separate page 2 language. First, if Wells wanted to show that the page 3 signature was a signature for "Agreement to Received Account Agreement", then it should have captioned the box accordingly as it did with the TIN signature box on page 2.

Second, the Declaration does not state that Muskal immediately received page 2 prior to signing page 3, or was informed in any way that his signature on page 3 related to page 2. In fact, we do not know whether Muskal received or reviewed the Account Application **at all** prior to signing on page 3. The Declaration contains no assertion that Muskal ever reviewed or received the Account Application. While the Declaration vaguely assures that the Account Application is one document consisting of three pages (¶7), Muskal could hardly get on the Bank employee's computer and scroll down three pages if he was not given a hard copy of the Account Application to review.

Moreover, it is common knowledge that a bank must have a customer's signature on hand – the signature card -- for review of a customer's signature prior to approval of withdrawals, check cashing and other transactions. As far as Muskal was concerned, this page 3 signature could have simply been Muskal's signature card for approval of future bank transactions, rather than an agreement to an Account Agreement which he never reviewed or saw. Nothing in Exhibit A or the Declaration shows otherwise, and we (and Muskal) know that Muskal must have made a signature for his signature card at some point during his account opening.

What could have happened here is that Muskal visited the Bank and made two signatures on a tiny little signature box – one stating that he had provided the Bank true information to open his account, and the other for his signature card to operate the account, and the Declaration provides no proof otherwise. But Muskal never assented to an arbitration provision that was never reviewed or presented to him prior to his signature, and the Declaration provides no proof otherwise. Without such mutual assent, no agreement to arbitrate ever existed -- and this Motion must be denied.

Moreover, the Wells' Motion is even forcing plaintiff and this Court to guess where and how these Muskal signatures took place – which would be reason enough to deny this Motion for insufficient proof. But this ambiguity is extremely troublesome here where we cannot know what Muskal reviewed prior to his signature on Exhibit A page 3 -- perhaps Muskal even opened this Bank Account online from his home.

Nor do we have the hard document of Exhibit A to show that Muskal actually reviewed and agreed to the prior pages of a hard document when he signed the "page 3." It is apparent from the form of Exhibit A that all its separate pages are electronic and electronically signed,

including from the failure to check the boxes on page 2 and 3 for "submit manually" for hard copies. There was probably a small electronic signature box for Muskal to manually append his signature as shown on page 3. As to what specifically Muskal was shown before making the page three box signature – we do not know and Wells has not provided any proof. And as to what Muskal believed he was signing for with the page 3 signature – we do not know and Wells has not provided any proof. To satisfy its burden of proof that the untitled uncaptioned lone signature on page 3 has anything to do with the language on page 2 – rather than just be a signature card or opening up a savings account – Wells had to provide additional proof outside of Exhibit A or in the Declaration which is not done in the Motion. Wells had the burden to show proof of the process by which this Court could make the determination of what the page 3 signature was for, and it has failed to do so.

As in *Pearson,* the Exhibit B arbitration agreement does not bear Muskal's signature, the arbitration agreement is not mentioned in the Complaint, and Wells has not provided sufficient proof that Exhibit A was actually presented to Muskal prior to his signature to show mutual assent to arbitration. Accordingly, as in *Pearson*, the motion to compel arbitration should be denied -- compulsion of arbitration is inappropriate where the proponent of arbitration fails to produce evidence that a mutual agreement to arbitrate existed. *Pearson, id., citing General Ass'n of Regular Baptist Churches v. Scott*, 549 Fed. Appx. 531, 532 (7th Cir. 2013).

The citations in Wells' Motion are inapposite to the facts here. In *Sha-poppin* the issue here was not in dispute at all – "Plaintiffs do not dispute that they are bound by the deposit account agreement." *Sha-poppin* at *9-10. *Sha-poppin's* dicta acknowledged that a signature card "acknowledging receipt of the DAA" could demonstrate plaintiffs' assent to the DAA's terms, the issue here is that the signature on page 3 of Exhibit A is separate from Exhibit A page

2 that may have not been reviewed by Muskal at all. And neither *Perik* nor *Kaplan* discuss the issue here of an account application signature where Muskal never received the full application language he was purportedly agreeing to, or addressed the lack of mutual assent.

**3. There is insufficient proof that Muskal ever received the deposit account agreement for review or "continued use".**

The Declaration asserts that all account applicants receive a copy of the applicable account agreement when opening an account, and its only explanation as to how the agreement is received is in paragraph 11 which asserts that it was emailed to decedent on November 19 as part of a New Account Kit -- and that decedent "accepted the New Account Kit before the account was opened." Yet the Declaration does not state how the declarant knew from his personal knowledge that Muskal had "accepted" the Kit, or how the declarant knew that Muskal had opened the email, or how the declarant even knew that the email had successfully reached Muskal. Accordingly, the affidavits speculation here without personal knowledge is inadmissible, and thus Wells has not presented sufficient proof on this issue to carry its Motion. *See Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888 (1990) (mere speculation or conjecture, even if presented in affidavit form, would not convert the statements into competent evidence); *McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004) (inferences that are supported by only speculation or conjecture are not competent evidence). While this Court should find that Muskal never signed any assent to arbitration, Muskal could certainly not mutually assent to a document he never received. *See Pearson, id.*

Wells also cites the "continued use" of the account, but as shown in the Complaint such continued use was Muskal being defrauded in rural Jamaica rather than authorized "continued use" which would render Wells' argument apposite. Moreover, continued use should not

constitute mutual assent where there is no proof that Muskal ever received the account agreement at issue that could be agreed to by continued use. *See Pearson, id.*

**4. Any finding of mutual assent under these circumstances would be procedurally unconscionable.**

Wells also argues that Muskal had constructive knowledge of the arbitration provision through small print at the end of his Bank statements, citing the unpublished case of *Perik*. While this evidence is insufficient to show the necessary mutual assent as detailed in *Pearson,* this Court should also reject any such finding to compel arbitration as procedurally unconscionable for this elderly 83-year old man simply trying to open a bank account.

Procedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of a meaningful choice. *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co*., 86 Ill. App. 3d 980, 408 (1st Dist. 1980). The Illinois Supreme Court has held that "procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it." *Kinkel v. Cingular Wireless LLC* 857 N.E.2d 250, 264 (Ill. 2006). In determining whether a contract is procedurally unconscionable, courts should consider all the circumstances surrounding the transaction including the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print. *Id*. While both the conspicuousness of the clause and the negotiations relating to it are important, they are not conclusive factors in determining the issue of unconscionability. *Kinkel*, 857 N.E.2d at 264. Factors making a court more likely to find unconscionability include the involvement of a consumer, a disparity in bargaining power, and the presence of the allegedly unconscionable provision on a preprinted form. *Id.*

As shown above, procedural unconscionability also precludes application of the arbitration clause here for this elderly consumer suffering from a disparity in bargaining power. This is true especially where there is no proof that Muskal as an elderly and quite sick bank customer ever saw it or agreed to it; and the arbitration provision is buried on page 38 of a 92-page document sent to a new customer, even presuming Muskal ever received this document. Muskal had no bargaining power, was presented with take-it-or-leave-it, and (at best) only saw the provision on the day he signed it. See *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 201-202 (3rd Cir. 2010) (procedural unconscionability present with take-it or leave it presentation and significant disparity in bargaining power); *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1001, (9th Cir. 2021) (same – unfair surprise as well)

Illinois law further supports barring the clause here. In *Zuniga*, 2021 IL App (1st) 201264, the court found that an arbitration agreement was procedurally unconscionable when it was referenced in fine print on the back of a ticket and the plaintiff would need to access either the ticket office or a website to find the full terms of the agreement. *Id.* ¶ 21. It was no easier for the elderly Muskal to research for himself any terms of the arbitration provision here. The doctrine was applied by the supreme court to invalidate a clause in a car warranty excluding consequential damages, based on evidence showing that the warranty was printed only in the car's owner manual located inside the car's glovebox and unavailable to the plaintiff until after she signed the purchase contract for the car. *Razor v. Hyundai Motor Am.*, 222 Ill. 2d 75, 100-01 (Ill. 2006). Likewise here, there is no competent evidence that Muskal received the deposit agreement and arbitration clause before he “agreed” to it. For all the reasons above, the Motion to Compel arbitration should be denied.

**II. The request for attorney fees should be denied under both procedural and substantive unconscionability.**

While this Court should consider this issue separately only if and at some point after the Court grants the Motion to Compel Arbitration -- and then only after Wells moves for fees and plaintiff can respond accordingly -- plaintiff will briefly address the issue here. In Illinois, an unconscionability finding "may be based on either procedural or substantive unconscionability, or a combination of both." *Kinkel*, 857 N.E.2d at 263. In this matter, the fee-shifting provision is unconscionable under both.

**A. Any finding of mutual assent to the fee shifting under these circumstances would be procedurally unconscionable.**

For all the reasons above regarding the procedural unconscionability of the arbitration clause itself, they apply with even much greater force for the arbitration fee-shifting provision, which is hidden on page 38 of Exhibit B. Wells has cited no Illinois case that has ever allowed fee-shifting solely on the success of the Motion to Compel Arbitration, and there was no reason for Muskal to expect such a clause much less have to search for it on page 38 of a document. Even Wells case of *Esker* states: "Contractual provisions for an award of attorney fees must be strictly construed, and the court must determine the intention of the parties regarding the payment of fees." *See J.B. Esker & Sons, Inc. v. Cle-Pa's P'Ship*, 757 N.E.2d 1271, 1276 (1st Dist. 2001). In this matter, any finding of a mutual intention of the parties for this fee-shifting clause would be procedurally unconscionable under *Zuniga* and *Razor.* And such procedural unconscionability "is a factor to be considered in combination with our findings on the question of substantive unconscionability." *Kinkle,* 857 N.E.2d at 266 (finding certain arbitration provisions unconscionable and unenforceable).

**.B. Fee shifting of a challenge to arbitration is also substantively unconscionable, particularly under the circumstances here where plaintiff's first challenge was successful.**

Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. *Kinkle, id.* Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity. *Id.*

In this matter, where plaintiff's claims under the EFTA could award its attorneys fees and costs, it is substantively unconscionable to chill those rights to access the courts by fee-shifting on the mere good-faith challenge to arbitrability. The California Supreme Court found such substantive unconscionability on an identical fee-shifting provision for the arbitrability decision winner in *Ramirez v. Charter Communications, Inc*., as such a provision was against the public policy of asymmetrical access to the courts in statutes where a successful plaintiff could have his fees paid for. 16 Cal. 5th 478, 512 (2024). *Ramirez* even overruled a case which allowed fee-shifting "where the plaintiff's opposition to the motion to compel arbitration was frivolous or groundless", but even such an added safety guard was not enough to preserve the fee-shifting provision. *Id.*

Moreover, the fee-shifting here is one-sided. Plaintiff could not recover its fees for all its costs imposed in opposing arbitration if plaintiff is successful.

Under the exact same reasoning as *Ramirez* and pursuant to *Kinkle* this Court should bar application of the provision here. This is especially true under these circumstances where Wells has already imposed additional costs on plaintiff through its aborted first Motion to Compel prior to its amendment, and plaintiff has no opportunity to recover those costs. A plaintiff should not be punished for a good-faith challenge to arbitration to enforce

its rights under the EFTA in the courts, and on this record it would be both procedurally and substantively unconscionable to fee-shift the arbitration briefing.

For all the reasons above, the Motion to Compel Arbitration should be denied.

By:____/s/ Michael Steigmann_____
Attorney for Plaintiff

Michael Steigmann
150 S. Wacker Dr. #2400
Chicago, Illinois 60601
(312) 833-5945