**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STEVEN MUSKAL, as Independent Administrator of the Estate of James B. Muskal,<br><br>Plaintiff,<br><br>-against-<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Civil No. 1:25-cv-15478<br><br>Judge Thomas M. Durkin |

**DEFENDANT WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF AMENDED MOTION TO COMPEL ARBITRATION, TO STAY LITIGATION, AND FOR ATTORNEY'S FEES AND COSTS**

Defendant, Wells Fargo Bank, N.A., files this Reply in Support of its Amended Motion to Compel Arbitration, to Stay Litigation, and for Attorneys' Fees and Costs [Dkts. 26 and 27].

In its Response Opposing the Motion to Compel Arbitration [Dkt. 30] ("Response"), Plaintiff does not dispute that (1) Decedent signed the Consumer Account Application ("Account Application"), (2) an Arbitration Agreement exists between the parties, and (3) the claims asserted in this lawsuit are within the scope of the Arbitration Agreement. Nevertheless, Plaintiff argues the Arbitration Agreement should not be enforced, relying entirely on speculation and fictional requirements of proof. Plaintiff's arguments are easily rebutted, as they are not supported by the facts or law. Because Wells Fargo has met its burden of proving a written agreement to arbitrate exists, the Court should grant the Motion.

**A. It is undisputed that Decedent signed the Account Application, which demonstrates his assent to the Arbitration Agreement.**

Plaintiff does not dispute that Decedent signed the Account Application. Under Illinois law,

Decedent's signature on the Account Application acknowledging his receipt of the Account Agreement is sufficient to demonstrate his assent. *See, e.g., Hamlin Tec, Inc. v. JPMorgan Chase Bank N.A.*, 785 F. Supp. 3d 340, 350 (N.D. Ill. 2025); *DriverDo LLC v. JP Morgan Chase Bank, N.A.*, 20 C 5046, 2022 WL 3645909, at *4 (N.D. Ill. Aug. 24, 2022) ("When a depositor signs signature cards in which they acknowledge receipt of a DAA, that is sufficient to demonstrate the depositor's assent to the DAA."); *Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 457 (N.D. Ill. 2021) (granting bank's motion to compel arbitration in accordance with deposit account agreement); *Cont'l Cas. Co., Inc. v. Am. Nat'l Bank & Tr. Co. of Chicago*, 329 Ill. App. 3d 686, 692, 768 N.E.2d 352, 357 (1st Dist. 2002) ("A binding contract between a bank and its depositor is created by signature cards and a deposit agreement."); *W. Assur. Co., Inc. v. Star Fin. Bank of Indianapolis*, 3 F.3d 1129, 1131 (7th Cir. 1993). Wells Fargo has properly authenticated the Account Application, and Plaintiff does not assert otherwise. *See Pearson v. United Debt Holdings, LLC*, 123 F. Supp. 3d 1070, 1073 (N.D. Ill. 2015) ("The bar for authentication of an arbitration agreement is not high."); *Conway v. Done Rite Recov. Servs., Inc.*, 14-CV-5182, 2015 WL 1989665, at *3 (N.D. Ill. Apr. 30, 2015) ("A proponent is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be.") (cleaned up). Thus, Wells Fargo has shown Decedent agreed to the Arbitration Agreement. *See, e.g., Janiga v. Questar Capital Corp.*, 615 F.3d 735, 743 (7th Cir. 2010) ("The problem for Janiga is that he signed a contract, and that the paper he signed refers to arbitration. Janiga's signature—which he admits was given voluntarily—objectively demonstrated his assent to the contract.").

Plaintiff asserts three arguments why the signed Account Application is not sufficient: (1) Wells Fargo has not proven "where" and "how" Decedent signed the Account Application;

(2) his signature on page 3 of the Account Application is not connected to the language immediately preceding it acknowledging his receipt of and agreement to be bound by the Account Agreement; and (3) Wells Fargo does not assert that he received and reviewed the Account Application. None of these arguments have merit.

***1. Wells Fargo is not required to prove where or how Decedent signed the Account Application to enforce the Arbitration Agreement.***

There is no requirement under Illinois law that a party to a contract must prove "where" or "how" the other party signed it to enforce the contract. None of the cases cited by Plaintiff support its position. Plaintiff never disputes that the signature on the Account Application is in fact Decedent's signature. *See generally* Resp., Dkt. 30. Plaintiff's argument that Decedent's signature does not constitute mutual assent because there is ambiguity over where and how he signed it is nothing more than a red herring.[1]

***2. Decedent's signature on page 3 is plainly connected to the acknowledgment of his receipt of the Account Agreement and agreement to be bound by it.***

Plaintiff asserts that the signed Account Application is insufficient to show Decedent's assent to the Arbitration Agreement because his signature on page 3 is not connected to the language that immediately precedes it acknowledging his receipt of the Account Agreement and agreement to be bound by the terms thereof. *See* Resp., p. 5. This is simply not true. The language acknowledging his receipt and agreement to be bound, appears under the "Customer Signatures" section of the Account Application, on page 2. *See* Driscoll Decl., 27-1, at Ex. A, p. 2. As shown below, Decedent signed in the signature box on page 3 captioned "Customer 1 Signature" as part of the same "Customer Signatures" section of the Account Application:

---

[1] It is clear from the Account Application itself where it was signed. *See* Driscoll Decl., Dkt. 27-1, at Ex. A, p. 1 (noting the branch name, banker, banker phone, branch number, and banker employee number who assisted with opening the Account).

**Customer Signatures**

Everything I have stated in this application is correct. You are authorized to make any inquiries that you consider appropriate to determine if you should open or maintain the account. This may include ordering a credit report or other report (i.e. information from any motor vehicle department or other state agency) on me. **I have received a copy of the applicable account agreement and the privacy policy (each may be amended from time to time) and agree to be bound by their terms.** I also agree to the terms of the dispute resolution program described in the foregoing agreements. **Under the dispute resolution program, our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge.**

DSG8921 (9-24 SVP) 2W02-001724597255-02 Page 2 of 3
Wells Fargo Confidential

Consumer Account Application

Customer 1 Name
JAMES B MUSKAL

Customer 1 Signature
JAMESBMUSKAL

☐ Submit manually
☐ Signature not required

Date:
11/19/2024

*See* Driscoll Decl., Dkt. 27-1, at Ex. A, pp. 2-3. Decedent's therefore shows his receipt of the Account Agreement and agreement to be bound by its terms, including the Arbitration Agreement.

**3. *Decedent is bound by the Account Agreement, including the Arbitration Agreement, even if he did not review it.***

Plaintiff argues the Account Application fails to establish mutual assent because Wells Fargo has not proven "whether [Decedent] received or reviewed the Account Application at all prior to signing on page 3." Resp., p. 5. This argument is nonsensical. Decedent could not have signed the Account Application without receiving it. By conceding that Decedent signed the Account Application, Plaintiff concedes that he received it.

Further, the law does not require Wells Fargo to prove that Decedent reviewed its terms. It is undisputed that he signed it. "It is 'a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them.'" *Conway*, 2015 WL 1989665 at *4 (quoting *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992)); *see Hamlin*, 785 F. Supp. 3d at 350 ("Courts have previously found that '[w]hen

a depositor signs signature cards in which they acknowledge receipt of a DAA, that is sufficient to demonstrate the depositor's assent to the DAA' and that '[a] party who has signed a contract is charged with knowledge of and assent to its terms.'"). As explained by the Seventh Circuit:

> … Paper Express asserts fraud in that it was unlikely that anyone at Paper Express read the VDMA since the rules are in "extremely fine print" and are in German. An inference of fraud may arise if a clause is actually buried in illegible fine print, and fraud, of course, is a defense to a contract. *Donovan,* 916 F.2d at 377. But it is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them. 3 Arthur L. Corbin, *Corbin on Contracts* 607 (1989); 13 Samuel Williston, *Williston on Contracts* 1577 (1988). Nothing excuses Paper Express for its failure to read its own purchase order which incorporated the rules of the VDMA by reference. Nor does the fact that the rules were in German preclude enforcement of the contract. In fact, **a blind or illiterate party (or simply one unfamiliar with the contract language) who signs the contract without learning of its contents would be bound**. Mere ignorance will not relieve a party of her obligations and she will be bound by the terms of the agreement. … [A] party who agrees to terms in writing without understanding or investigating those terms does so at his own peril.

*Paper Express*, 972 F.2d at 757 (emphasis added).

Decedent agreed to the Account Application's terms, regardless of whether he reviewed its text. *See Conway*, 2015 WL 1989665 at *4 ("In the absence of any claim that the signature is not his, i.e., that it is a forgery, the Court does not need further discovery to authenticate the agreement or determine that Plaintiff is bound by it."); *DriverDo*, 2022 WL 3645909 at *4 ("The signed signature cards plainly and unambiguously incorporate the DAA.").

**4. The evidence presented shows that Decedent received the Account Agreement.**

Plaintiff also asserts, without evidence, that Decedent never received the Account Agreement. *See* Resp., p. 8. This unsupported assertion does not overcome the evidence presented showing Decedent (1) acknowledged his receipt of the Account Agreement, and (2) received a copy of the Account Agreement by email.[2] *See* Driscoll Decl., Dkt. 27-1, ¶ 11 and Ex. A.

---

[2] Tellingly, Plaintiff does not dispute that the email address where the Account Agreement was sent belonged to Decedent.

Plaintiff ignores the exhibits attached to its own Complaint, which show that Decedent received the Account Agreement. Exhibits B and G are Decedent's monthly account statements, both of which contain a link to access the Account Agreement. *See* Compl., Ex. B at pp. 5-6 and Ex. G at p. 7. [3] Decedent's monthly statement dated January 31, 2025 contained the following:

**Important Account Information**

**Wells Fargo Deposit Account Agreement: Changes To Consumer Arbitration Agreement And Other Dispute Resolution Provisions**

Effective November 6, 2024, we are updating the Wells Fargo Deposit Account Agreement. This includes changes to the dispute resolution provisions. Wells Fargo greatly values and appreciates its relationships with its customers. These changes are designed to ensure that in the unlikely event that a dispute arises between us, that there are streamlined procedures in place to ensure a fair and efficient process in arbitration.

The changes to the arbitration agreement applicable to Consumer Accounts ("Arbitration Agreement" or "Agreement") can be found at pp. 38-39 of the Wells Fargo Deposit Account Agreement, including: (a) the party initiating arbitration must sign the arbitration demand and include certain information in its demand; (b) any party may request to have the arbitration conducted by a video or in-person hearing or through written submissions, with certain exceptions; (c) like in federal court, the arbitrator may issue sanctions or order cost shifting under certain circumstances consistent with the Federal Rules of Civil Procedure; (d) all issues are for the arbitrator to decide, except that issues relating to whether an arbitration agreement exists or whether a dispute falls within that agreement, or whether the agreement is enforceable, are for a court to decide; and (e) a small claims court will determine whether a dispute falls within its jurisdiction if a party chooses to have a claim brought to such a court.

The updates also include changes to the Additional Terms and Services, located at pp. 42-43 of the Wells Fargo Deposit Account Agreement, including: (a) modifications to the class action waiver applicable in arbitration and litigation; and (b) the addition of a venue provision noting that if the Arbitration Agreement is ever deemed not applicable, then, except for disputes brought in small claims court, the parties consent to the jurisdiction of the state or federal courts in the state whose laws govern the consumer's account.

The revised Deposit Account Agreement, effective November 6, 2024, is available at www.wellsfargo.com/online-banking/consumer-account-fees/, by calling the Bank at the number listed on your account statement, or by visiting a branch.

Compl., Ex. G at p. 7. It is indisputable that Decedent received the Account Agreement.

[3] The Court can take judicial notice that the link in the statements attached as Exhibit B and G to the Complaint is a link to the Consumer Account Disclosures page of Wells Fargo's website. *See* https://www.wellsfargo.com/online-banking/consumer-account-fees/ (last visited 6/9/2026); Fed. R. Evid. 201(b) ("[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *R.S.B. Ventures, Inc. v. F.D.I.C.*, 514 Fed. Appx. 853, 857 (11th Cir. 2013) ("we take judicial notice of the information found on the FDIC's website.").

**5. Decedent agreed to be bound by the terms of the Account Agreement by his continued use of the Account.**

Even if the Court finds a credible dispute exists as to whether Decedent assented, the evidence irrefutably shows Decedent agreed to be bound by the terms of Arbitration Agreement. The FAA does not require an arbitration agreement to be signed to be enforceable. *See, e.g., Seawright v. Am. Gen. Fin. Services, Inc.*, 507 F.3d 967, 978 (6th Cir. 2007) ("arbitration agreements under the FAA need to be written, but not necessarily *signed*.") (emphasis in original); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000) ("a party can agree to submit to arbitration by means other than personally signing a contract containing an arbitration clause."). It is well-settled law that a party can agree to an arbitration agreement through their conduct. *See, e.g., Perik v. JP Morgan Chase Bank, U.S.A., N.A.*, 2011 IL App (1st) 093088-U, ¶ 35 ("By continuing to use her account at Chase, Perik acquiesced to the 2006 Agreement's terms, which included changes to the arbitration provision."); *Boomer v. AT & T Corp.*, 309 F.3d 404, 416–17 (7th Cir. 2002) (plaintiff's continued use of defendant's services constituted his acceptance of arbitration agreement); *Madacsi v. Citibank, N.A.*, No. 9:24-CV-81294, 2024 WL 4723123, at *2 (S.D. Fla. Nov. 8, 2024) (granting motion to compel arbitration and finding plaintiff agreed to the bank's account agreement by opening an account).

The Court can find that Decedent received the applicable Account Agreement from the Complaint itself. *See* Compl., Ex. B at p. 6 and Ex. G at p. 7.[4] Moreover, Wells Fargo specifically invited Decedent's acceptance of the terms of the Account Agreement by his conduct, i.e. opening the Account, keeping it open, and using the Account. *See* Driscoll Decl., Ex. B at p. 2. By continuing to use the Account after receiving the Wells Fargo monthly account statement dated

---

[4] Both monthly account statements also explicitly refer to the Arbitration Agreement contained in the Account Agreement. *See* Compl., Ex. B at pp. 5-6 and Ex. G at p. 7.

December 31, 2024, Decedent agreed to the terms of the Account Agreement, including the Arbitration Agreement. *See* Compl., Ex. B and Mot., Ex. B at p. 2.

Plaintiff disingenuously argues that the "continued use" of the Account was fraudulent and cannot constitute Decedent's mutual assent to the Arbitration Agreement. *See* Resp., p. 8. But Plaintiff does not allege that all account activity following the opening of the Account was fraudulent. More importantly, as shown on the monthly account statements attached as Exhibits B, G, and H to the Complaint, funds were continuously deposited and transferred. *See* Compl., Exs. B, G, and H. If those deposits and fund transfers were fraudulent, Plaintiff does not have standing to assert any claims against Wells Fargo regarding the subsequent removal of those same funds.

Accordingly, even if this Court finds that there is a credible dispute as to whether Decedent assented to the terms of the Account Agreement by signing the Account Application, the Court nevertheless can and should find that the Arbitration Agreement is valid and enforceable.

**6. There is no basis to find that the arbitration agreement was procedurally unconscionable.**

Plaintiff argues that enforcing the Arbitration Agreement would be procedurally unconscionable because Decedent was elderly and had unequal bargaining power, and the Arbitration Agreement "is buried on page 38 of a 92-page document." Resp., pp. 9–10.[5] But Decedent was not left to discover the Arbitration Agreement by searching through the Account Agreement. The Arbitration Agreement was disclosed in the **three-page** Account Application itself—in emphasized, bold text—and Decedent signed immediately below that disclosure. Driscoll Decl., Dkt. 27-1, at Ex. A, pp. 2–3. The Arbitration Agreement is further disclosed on **page 2** of the Account Agreement—once again, in emphasized, bold text. *See id.* at Ex. B, p. 2.

[5] The Arbitration Agreement is contained in the Deposit Account Agreement, which is 44 pages. *See* Driscoll Decl., Dkt. 27-1, at Ex. B.

This is the opposite of a hidden or inconspicuous term. *See Fahy v. Minto Dev. Corp.*, 722 F. Supp. 3d 784, 804 (N.D. Ill. 2024) ("Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it…."); *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 777–78 (7th Cir. 2014) (describing factors to be considered for procedural unconscionability to include "whether important terms were hidden in a maze of fine print").

Moreover, contracts of adhesion "are a fact of modern life." *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 26, 857 N.E.2d 250, 266 (2006) ("Consumers routinely sign such agreements to obtain credit cards, rental cars, land and cellular telephone service […], and other products and services. It cannot reasonably be said that all such contracts are so procedurally unconscionable as to be unenforceable."); *see Zuniga v. Major League Baseball*, 2021 IL App (1st) 201264, ¶ 15, 196 N.E.3d 12, 21 ("a provision contained in a consumer contract will not be found procedurally unconscionable merely because a business sought to impose it through a standardized, take-it-or-leave-it contract over which the consumer had no ability to negotiate (*i.e.*, a contract of adhesion)."). Plaintiff's cases are materially different from the instant case. In *Zuniga*, the arbitration agreement was referenced in fine print on the reverse side of a ticket and the consumer had to visit a ticket office or website to obtain the full terms. *See id.* at ¶ 4. In *Razor v. Hyundai Motor America*, the disclaimer found to be procedurally unconscionable was withheld from the consumer until after she purchased the car. 222 Ill. 2d 75, 101, 854 N.E.2d 607, 623 (2006). Here, the Arbitration Agreement was disclosed in the Account Application and provided to Decedent before he opened the Account. *See* Discoll Decl., Dkt. 27-1, at ¶ 11 and Ex. A. There is simply no basis to find that enforcing the Arbitration Agreement would be procedurally unconscionable.

**7. The attorney's fees provision is not substantively unconscionable.**

Plaintiff misconstrues the attorney's fee provision of the Arbitration Agreement in an effort to support its argument that enforcing the provision in favor of Wells Fargo is substantively unconscionable. "Substantive unconscionability exists when contract terms are inordinately one-sided in one party's favor." *Zuniga v. Major League Baseball*, 2021 IL App (1st) 201264, ¶ 14, 196 N.E.3d 12, 20. The attorney's fees provision at issue is not one-sided. The provision allows either party to recover its attorney's fees and costs incurred in compelling arbitration against the party who does not agree to submit to arbitration following a lawful demand. *See* Driscoll Decl., Dkt. 27-1, at Ex. B, p. 38. Thus, the provision is mutual, and it is not substantively unconscionable to enforce it in favor of Wells Fargo. *Baggaley v. Wells Fargo Bank, N.A.*, CV1803605ABFFMX, 2018 WL 8804575, at *3 (C.D. Cal. Nov. 8, 2018) ("The Court also finds that the fee provision is not substantively unconscionable because the fee provision is not one-sided—both parties are entitled to recover attorneys' fees spent in the process of compelling arbitration.").

Moreover, the provision is limited to the recovery of attorney's fees and costs incurred in compelling arbitration. It does not infringe on the EFTA's authorization of an award of attorney's fees and costs in favor of a prevailing consumer. And Plaintiff could have avoided liability for Wells Fargo's attorney's fees and costs by simply agreeing to voluntarily submit its claims to arbitration given the binding and enforceable Arbitration Agreement.

**Conclusion**

There is more than sufficient evidence in the record for the Court to find that the Arbitration Agreement is a valid, enforceable agreement to arbitrate between the parties. Because Plaintiff does not dispute that the Arbitration Agreement covers the claims at issue, the Court should compel Plaintiff to submit its claims to arbitration.

Dated: June 9, 2026

By: /s/ Matthew Scot Payne
Attorney for Defendant Wells Fargo Bank, N.A.

MATTHEW SCOT PAYNE
mpayne@foxrothschild.com
Fox Rothschild LLP
321 N. Clark Street, Suite 1600
Chicago, Illinois 60654
Phone (312) 517-9200