UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN MUSKAL, AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF JAMES B. MUSKAL,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | No. 25 C 15478<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Steven Muskal ("Plaintiff"), on behalf of the estate of his father James B. Muskal ("Muskal"), brought claims for violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693m, and negligence against Defendant Wells Fargo Bank, N.A. ("Wells Fargo") for refusing to reimburse allegedly unauthorized transactions on Muskal's account. Wells Fargo moves to compel arbitration. R. 26. For the following reasons, that motion is granted.

**Background**

Plaintiff alleges that, over the course of approximately 12 weeks from December 2024 through March 2025, more than $100,000 was fraudulently taken from Muskal via purchases and ATM cash withdrawals made in Santa Cruz, Jamaica. R. 1 ¶¶ 1, 7, 34. During this time, Muskal was in Chicago, Illinois where he remained until his death on March 13, 2025. *Id.* ¶ 14. After his father's passing, Plaintiff discovered the alleged fraudulent transactions and submitted a claim to

Defendant that included evidence supporting that Muskal was not in Jamaica and that the transactions were unauthorized. *Id.* ¶¶ 32–33. Defendant reimbursed only the amount withdrawn after Muskal's death—less than $2,500 of the $103,823 claim. *Id.* ¶ 34.

Plaintiff subsequently filed the instant suit on December 19, 2025. R. 1. On February 23, 2026, Defendant filed a motion to compel arbitration based on an arbitration provision in Muskal's Account Agreement. R. 13. Plaintiff responded on March 6, 2026, arguing that the Account Agreement was unauthenticated, inadmissible, and insufficient to show that Muskal consented to the Arbitration Agreement. R. 18. On March 20, 2026, Defendant filed a motion to amend its motion to compel to include a declaration from Shayne Driscoll, a Wells Fargo representative, and some clarifying details regarding the authenticity and admissibility of the Account Agreement. R. 19. The Court granted leave to amend. R. 25. On May 5, 2026, Wells Fargo filed its amended motion to compel arbitration. R. 26.

## Legal Standard

Under the Federal Arbitration Act ("FAA"), "arbitration should be compelled if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017). The Supreme Court has emphasized the FAA "leaves no place for the exercise of discretion by a district court." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). However, a "party 'cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Scheurer*, 863 F.3d at 752 (quoting *United Steelworkers*

*of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). "Whether an agreement to arbitrate has been formed is governed by state-law principles of contract formation." *Domer v. Menard, Inc.*, 116 F.4th 686, 694 (7th Cir. 2024). In Illinois, "[f]ormation of a contract requires mutual assent," which is analyzed using an "objective standard." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016). The party seeking to compel arbitration bears the burden of proving the agreement to arbitrate exists. *Pearson v. United Debt Holdings, LLC*, 123 F. Supp. 3d 1070, 1073 (N.D. Ill. 2015).

**Discussion**

Plaintiff does not contest that the present dispute is within the scope of the purported arbitration agreement. At issue here is whether there was an enforceable written agreement to arbitrate.

Wells Fargo has attached to its amended motion to compel arbitration the subject Arbitration Agreement, R. 21 Ex. 1-B, Muskal's signed Consumer Account Application, R. 21 Ex. 1-A, and a declaration from a Wells Fargo representative attesting that Muskal received a copy of the Arbitration Agreement by email before opening his account on November 19, 2024, R. 21 Ex. 1 ¶¶ 10–11. Notably, Muskal's Consumer Account Application states in bold—sandwiched between two of his signatures—"**I have received a copy of the applicable account agreement and the privacy policy (each may be amended from time to time) and agree to be bound by their terms.** I also agree to the terms of the dispute resolution program described in the foregoing agreements. **Under the dispute resolution program, our disputes will be decided before one or more neutral persons in an**

**arbitration proceeding and not by a jury trial or a trial before a judge.**" R. 21 Ex. 1-A at p. 2.

Nevertheless, Plaintiff asserts that Wells Fargo has not met its burden to establish mutual assent to arbitrate because there is insufficient evidence that Muskal was properly made aware of the Arbitration Agreement and insufficient evidence that his signatures evidenced his agreement to it. These arguments are without merit.

The most common way to show mutual assent is through a signature on a contract. *Arbogast v. Chi. Cubs Baseball Club, LLC*, 2021 IL App (1st) 210526, ¶ 21. Once parties sign a contract, "there is a presumption that the writing expresses their mutual intentions, and this presumption does not yield unless evidence to the contrary is strong and convincing." *Bd. of Educ. of Arbor Park Sch. Dist. No. 145, Cook Cnty. v. Ballweber*, 96 Ill. 2d 520, 527 (1983) (citations omitted). Under Illinois law, a binding contract between a bank and its depositor is created by signature cards and an account agreement. *DriverDo LLC v. JP Morgan Chase Bank, N.A.*, No. 20 C 5046, 2022 WL 3645909, at *4 (N.D. Ill. Aug. 24, 2022). Thus, the Consumer Account Application is a binding contract. Despite Muskal's signature on the contract, Plaintiff claims that Wells Fargo has not provided "proof of a connection" from Muskal's signature to an agreement to arbitrate—"or even that Muskal was shown any arbitration provision before signing." R. 30 at p. 4.

Shayne Driscoll of Wells Fargo attested that Muskal "received a copy of the Account Agreement as part of the New Account Kit emailed to him on November 19,

2024" and that he "accepted the New Account Kit before the Account was opened." R. 27 Ex. 1 ¶ 11. According to Driscoll, all account applicants receive a copy of the Account Agreement when opening an account. *Id.* ¶ 9. Furthermore, Muskal's signature on the Consumer Account Application acknowledges receipt of the Account Agreement. Plaintiff's assertion to the contrary is unsupported by the plain language of the contract.

Plaintiff further maintains that Muskal's signatures on the Consumer Account Application are not connected to the agreement to arbitrate. Quite the opposite, Muskal's signature appears both above and below bold text acknowledging receipt of the Account Agreement containing the Arbitration Agreement and expressly agreeing to handle disputes "in an arbitration proceeding." R. 21 Ex. 1-A at p. 2; *see Janiga v. Questar Capital Corp.*, 615 F.3d 735, 743 (7th Cir. 2010) (finding it "impossible to avoid the conclusion that [plaintiff] agreed to arbitration" when directly above his signature is a statement agreeing to the receipt and terms of an arbitration agreement). Plaintiff argues that because the signature after the statement falls onto the subsequent page of the document it is somehow unconnected to the text above it. But "[a] party need not sign every page of a contract in order for the whole contract to be effective." 17 C.J.S. Contracts § 105; *see also Trade Ctr., Inc. v. Dominick's Finer Foods, Inc.*, 304 Ill. App. 3d 931, 934 (1999) (explaining that courts "consider the contract as a whole" in order to ascertain intent). While Plaintiff correctly points out that the signature above the statement is for "TIN Certification," it nonetheless

establishes that Muskal also signed the page of the document with the statement in question visible immediately below.[1]

Plaintiff additionally speculates that Muskal may have simply signed an electronic signature box without knowing what he was signing. But "[a] party who has signed a contract is charged with knowledge of and assent to its terms." *DriverDo LLC*, 2022 WL 3645909, at *4 (quoting *Arbogast*, 2021 IL App ¶ 21). Indeed, Muskal's signature on the Consumer Account Application is sufficient to demonstrate assent to it, which includes being bound to the Arbitration Agreement clearly incorporated by reference. *See id.* (citing *Perlberger Law Associates, P.C. v. Wells Fargo Bank, N.A.*, No. CV 21-2287, 2022 WL 2819136, at *5 (E.D. Pa. July 19, 2022)); *see also Chicago Pacific Corp. v. Canada Life Assurance Co.*, 850 F.2d 334, 337–38 (7th Cir. 1988) ("Under Illinois law, . . . the language of a contract binds the parties whether they read it or not, and when a contract incorporates another document by reference, the incorporated document binds the parties whether or not they choose to read that either." (internal citations omitted)). At bottom, Plaintiff must provide "strong and convincing evidence" to overcome the presumption that Muskal's signature signifies mutual assent. *Ballweber*, 96 Ill. 2d at 527. Plaintiff has not done so.

---

[1] Plaintiff also points out that Wells Fargo has not asserted where Muskal signed the account agreement (at home or online) or how Muskal signed the account agreement (electronically in a signature box or hard copy), R. 30 at p. 4, but Plaintiff does not explain the relevance of such information. Neither is required to show mutual assent. Notwithstanding, the Consumer Account Application includes the name, location, and number of the branch where the account was opened as well as the name and number of the banker who assisted with opening the account. R. 27 Ex. 1-A at p. 1.

Plaintiff next argues that even if there was mutual assent, compelling arbitration is procedurally unconscionable because Muskal was elderly, lacked bargaining power, and the arbitration provision is on page thirty-eight of a ninety-two-page document. "[P]rocedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it." *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 264 (Ill. 2006) (citations omitted). In analyzing whether a contract is procedurally unconscionable, courts consider "all the circumstances surrounding the transaction including the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print." *Id.* (quoting *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980, 990–91 (1st Dist. 1980).

Plaintiff's arguments in favor of a finding of procedural unconscionability are unavailing. Here, the Arbitration Agreement was provided to Muskal before he opened his account, is in a legible font, includes bold captions, and contains thorough explanations. And although it begins on page thirty-eight of the Account Agreement, it was also disclosed in the three-page Consumer Account Application—in bold text—and Muskal signed immediately below that disclosure. "[E]ven an arbitration clause that is difficult to find or hidden in a maze of fine print may still be considered part of the parties' bargain if it is brought to the consumer's attention." *Zuniga v. Major League Baseball*, 2021 IL App (1st) 201264, ¶ 15. And although Muskal was in his 80s when he opened the account, "[p]ersons of mature age are presumed to be

mentally competent[.]" *In re Estate of Gruske*, 534 N.E.2d 692, 695 (Ill. App. Ct. 3rd Dist. 1989). Plaintiff does not argue that Muskal lacked capacity to assent, and nothing in the record suggests the same. Additionally, Muskal was under no obligation to open an account with Wells Fargo, so there was no disparity in bargaining power. Plaintiff argues that Muskal was asked to "take-it-or-leave-it" but Muskal could have left it and sought to open an account with another of the numerous banks in Chicago. *See Zuniga*, 2021 IL App at ¶ 15 ("[A] provision contained in a consumer contract will not be found procedurally unconscionable merely because a business sought to impose it through a standardized, take-it-or-leave-it contract over which the consumer had no ability to negotiate . . . ."); *see also Kinkel*, 223 Ill. 2d at 26 ("Consumers routinely sign such agreements to obtain credit cards . . . and other products and services. It cannot reasonably be said that all such contracts are so procedurally unconscionable as to be unenforceable.").

Last, in addition to seeking to compel arbitration, Wells Fargo seeks attorneys' fees because, pursuant to the arbitration agreement, "the party that does not agree to submit to arbitration after a lawful demand must pay all of the other party's costs and expenses for compelling arbitration." R. 27 Ex. B at p. 38. "While the issue of whether a contract to arbitrate exists must be determined by the court, matters of contract interpretation are for an arbitrator to decide initially." *Mason v. St. Vincent's Home, Inc.*, 2022 IL App (4th) 210458, ¶ 47 (citations omitted) (overruled on other grounds by *Clanton v. Oakbrook Healthcare Ctr., Ltd.*, 2023 IL 129067, ¶ 47)). Therefore, this is a matter for the arbitrator, and the Court declines to address it.

## Conclusion

For the foregoing reasons, the Court grants Wells Fargo's motion to compel arbitration.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: November 18, 2026